THE PEOPLE OF THE STATE OF NEW YORK, Plaintiffs in Error, v. CHARLES SHAW, Defendant in Error.

Under the judiciary act of 1847 (§ 37, chap. 280, Laws of 1847) a Court of Oyer and Terminer cannot be held, except in the city and county of New York, unless composed of a justice of the Supreme Court and at least two of the other officers mentioned in the act.

A Court of Oyer and Terminer, before whom defendant in error was tried, consisted at the beginning of the trial of a justice of the Supreme Court, county judge, and two justices, members of the Court of Sessions. During the progress of the trial one of the latter absented himself for a day, during which the trial proceeded. Upon his return he took part in the subsequent proceedings. After the charge, and before the rendition of the verdict, the county judge left the court and did not return. *Held*, that the Sessions justice, by his absence, disqualified him-

self from further sitting, and his subsequent participation in the trial was error. Also, that the verdict was received by a court not legally constituted.

*It seems*, that upon the trial of an indictment for murder, declarations of the deceased, made when *in extremis*, which are not statements of fact which a living witness would have been permitted to testify to, but are merely expressions of belief and suspicions, are not competent evidence.

(Argued September 24, 1875; decided October 5, 1875.)

ERROR to the General Term of the Supreme Court in the third judicial department, to review order reversing judgment of a Court of Oyer and Terminer held in and for the county of Washington, entered upon a verdict convicting defendant in error of the crime of murder, and granting a new trial. (Reported below, 3 Hun, 272; 5 T. & C., 439.)

The defendant in error was tried and convicted under an indictment charging him with the murder of his wife by administering corrosive sublimate.

The facts pertinent to the questions to her discussed appear sufficiently in the opinion.

*James Gibson* for plaintiffs in error. The declarations of Mrs. Shaw, made after the family was discovered to have been poisoned, were properly received in evidence. (*Insurance Co.* v. *Moseley*, 8 Wall., 405; 2 Russ. on Crimes, 161, 762, 764; Greenl. Ev., § 190; *Rex* v. *Fouquet*, 7 C. & P., 238; *State* v. *Wagner*, 13 Am. L. Reg., 116–118; *Rex* v. *Baker*, 2 M. & R., 53; Roscoe's Ev., 29.) They were proper as dying declarations. (1 C. & H. Notes [Van Cott's ed.], 204, 320; 2 Russ. on Crimes, 360; 6 State Trials, 502; 2 Stark. Ev., 366; *Rex* v. *R. Strang*, 500; *People* v. *Grunzig*, 1 Park., 299; *People* v. *Green*, id., 11; *State* v. *Wagner*, 13 Am. L. Reg., 119; *Wroe* v. *State*, 20 Ohio St., 471; *Stevens* v. *Stevens*, 5 N. Y. S. C., 88; *Wilson* v. *N. Y. C. R. R. Co.*, 3 Keyes, 383; *People* v. *Wintz*, 37 N. Y., 307; *Walsh* v. *Wash. Co. Ins. Co.*, 32 id., 440, 441; Whart. Cr. L., § 678.) The absence of one of the justices of Sessions for a short time during the trial did not affect the jurisdiction of the court. (*Smith* v. *People*, 47 N. Y., 330; 2 R. S., 204; *Corning* v.

*Slauson*, 16 N. Y., 294 ; *Shorter* v. *People*, 2 Comst., 193 ; *Tuttle* v. *People*, 36 N. Y., 431 ; *Chamberlain* v. *Dempsey*, 15 Abb., 1 ; *Stevens* v. *People*, 19 N. Y., 549 ; *People* v. *Rathbun*, 21 Wend., 542 ; *Wightman* v. *People*, 8 Alb. L. J., 347 ; *Gardner* v. *People*, 6 Park., 155, 200 ; *Ratcliff's Case*, Crown Law, 40 ; *Messner* v. *People*, 45 N. Y., 1 ; *Graham* v. *People*, 63 Barb., 478, 480.)

*D. M. Westfall* for defendant in error. The court erred in receiving declarations of the deceased as to her surmises, suspicions, conjectures and conclusions. (1 Greenl. Ev., § 159 ; 1 Whart. Cr. L., § 678 ; 54 Barb., 370 ; 68 N. C., 62 ; 2 Colby Cr. L., 217 ; 2 Chand. [Wis.], 172.) The court erred in excluding the declarations of the deceased that she had poison and intended to use it, and her threats. (*Stokes* v. *People*, 53 N. Y., 164, 174 ; 8 Wall., 404 ; 1 Greenl. Ev., §§ 102, 108 ; *People* v. *Knapp*, 1 Edm.; *Reg.* v. *Christopher*, 12 Cox Cr. Cas., 230 ; 6 East, 188 ; 1 Whart., §§ 662, 777 ; *Smith* v. *State*, 9 Ala., 990.) The absence of one of the justices of the Sessions and of the county judge disorganized the court. (*Blend* v. *People*, 41 N. Y., 604 ; *People* v. *White*, 22 Wend., 167 ; 24 id., 520, 545, 547, 549, 562, 579 ; *Dohring* v. *People*, 2 N. Y. S. C., 458 ; *Cancemi* v. *People*, 18 N. Y., 128, 136, 137, 138 ; *People* v. *McKay*, 18 J. R., 212 ; *Shepherd* v. *People*, 25 N. Y., 406, 417 ; *Safford* v. *People*, 1 Park. Cr., 474 ; *Messner* v. *People*, 45 N. Y., 1.)

Rapallo, J. We are of opinion that, for the reasons assigned by Hardin, J., at General Term, the conviction in this case was properly reversed. We concur in his conclusion that the participation of Justice Steere in the trial, after his absence from the court for an entire day, was error. But we cannot fail to observe that the proceedings which resulted in the sentence of the prisoner are subject to the further fatal objection, that the verdict of the jury was not received by a legally constituted court. The judiciary act (Laws of 1847, chap. 280, § 38) prescribes that, except in the city and county of New York, Courts of Oyer and Terminer shall be com-

posed of a justice of the Supreme Court, who shall preside, the county judge, and the justices of the peace designated as members of the Court of Sessions ; and that the presiding justice and any two of the other officers above mentioned shall have power to hold said courts.  It is clear that under this statute a Court of Oyer and Terminer cannot be held except by a justice of the Supreme Court, and at least two of the other officers mentioned in the act.

The court before which the prisoner was tried consisted, at the beginning of the trial, of a justice of the Supreme Court, who presided, the Hon. A. D. Waite, county judge of Washington county, and two Sessions Justices, Lyle and Steere.  After the trial had progressed several days, Justice Steere absented himself from the court for an entire day, during which the trial proceeded and evidence was taken. A competent court, however, remained, and if Justice Steere had not returned, and the others had continued to the end, the present difficulty would have been avoided.  But he did return and take part in the subsequent proceedings.  This the General Term decided, for the very cogent reasons, and upon the authorities (except *Doran* v. *The People*, 2 S. C. R., 558, reversed in this court) stated by Judge Hardin, was error.  Justice Steere had, by his absence during a material part of the trial, disqualified himself from further sitting as a member of the court on that trial.  Consequently the only members authorized to sit were those who had remained throughout the trial, viz., the presiding justice, Judge Waite and Justice Lyle.  After the charge to the jury had been delivered by the presiding justice, but before the rendition of the verdict, Judge Waite left the court, and did not return, and when the jury came in there were present only the presiding justice, and Justice Lyle and Justice Steere, but, the latter having disqualified himself by his previous absence from taking further part in the proceedings, the only competent members of the court remaining were the presiding justice and Justice Lyle.  That they did not constitute a legal court is plain from the words of the judiciary act

before cited, which are, that the presiding justice, and any two of the other officers mentioned, 'shall have power to hold said courts. This language excludes the idea that any less number possessed such power.

The counsel for the prisoner, before sentence, moved in arrest of judgment, on the ·ground that no legal court was present to receive the verdict. The point being thus squarely taken, we are constrained to sustain it.

Our conclusion on this branch of the case is decisive of the present writ of error. Other important questions are presented by the bill of exceptions, which may arise on a new trial; some of the declarations of the prisoner's wife, when *in extremis,* were not of such a character as to make them evidence against the prisoner. They were not statements of facts to which a living witness would have been permitted to testify, if placed upon the stand, but the mere expression of belief and suspicions. It is doubtful, however, whether the objection to these declarations was taken in such form as to present its true ground. It was a general objection to a general question, as to what she said about the cause of her sickness; no specific objection was taken to the character of the declarations when disclosed. The question objected to might have drawn out a proper answer. But for this difficulty the opinion of COUNTRYMAN, J., at General Term, would conclusively show that, on the ground taken by him, the conviction should have been reversed. The declarations proved, though legally inadmissible, were calculated to seriously prejudice the prisoner before the jury. We are also inclined to think that the evidence was insufficient to connect the prisoner with the bottle found in the toll-house, and that the evidence tending to show that it contained corrosive sublimate was improperly admitted.

We do not deem it necessary to consider the other questions presented, as they may not arise on a new trial.

The judgment of the General Term should be affirmed.

All concur.

Order affirmed.