■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BERNARD GUMBS, Also Known as THOMAS WILLIAMS, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID MARRERO, Appellant. [38 NYS3d 169]—

Judgments, Supreme Court, Bronx County (Steven Lloyd Barrett, J.), rendered March 8, 2013 and April 9, 2013, convicting defendants, after a jury trial, of murder in the second degree, and sentencing defendant Gumbs to a term of 20 years to life, and sentencing defendant Marrero to a term of 25 years to life, unanimously reversed, on the law, and the matter remanded for a new trial as to both defendants.

Based on the evidence admitted at trial, we are satisfied that the evidence was legally sufficient to support the conviction and the verdict was not against the weight of the evidence (*see*

*People v Romero*, 7 NY3d 633 [2006]). However, we reverse the judgments and order a new trial because the court erred in admitting, as dying declarations, the victim's statements implicating defendants, since they were his "mere expression of belief and suspici[ons]" that defendants were involved in his shooting rather than "statements of facts to which a living witness would have been permitted to testify, if placed upon the stand" (*People v Shaw*, 63 NY 36, 40 [1875]).

Although the dying declarant may accuse his or her killer in conclusory language, "[t]he declaration is kept out if the setting of the occasion satisfies the judge, or in reason ought to satisfy him [or her], that the speaker is giving expression to suspicion or conjecture, and not to known facts" (*Shepard v United States*, 290 US 96, 101 [1933]; *see also People v Liccione*, 63 AD2d 305, 319-320 [4th Dept 1978], *affd* 50 NY2d 850 [1980]). Here, it is undisputed that neither of these defendants shot the victim or was present at the shooting; their alleged roles were that of hiring the person who did the shooting, and providing the murder weapon along with other assistance. Contrary to the People's argument, the question of what the victim was referring to when he implicated these defendants was not a proper jury question, nor did the lack of specificity merely go to the weight to be accorded this evidence.

The admission of the statements, which was over defendants' timely and specific objection, was not harmless. Although some facts that may have led the victim to suspect that defendants were involved in his murder were part of the trial evidence, there was nothing to prevent the jury from speculating that the victim was privy to other information, outside the record, connecting defendants to the crime. We also note that the jury, which issued several deadlock notes during its very lengthy deliberations, twice requested to hear the dying declaration evidence.

In light of the foregoing, we find it unnecessary to address any other issues relating to the admissibility of the dying declarations, or any of defendants' other arguments for reversal. Concur—Mazzarelli, J.P., Friedman, Andrias, Webber and Gesmer, JJ.