# FRANK *v.* MANGUM, SHERIFF OF FULTON COUNTY, GEORGIA.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 775.   Argued February 25, 26, 1915.—Decided April 12, 1915.

Petitioner was formally indicted for murder, placed on trial before a court of competent jurisdiction with a jury lawfully constituted, had a public trial deliberately conducted and with counsel for defense, was found guilty and sentenced pursuant to law of the State; subsequently he twice moved the trial court to grant new trial, and once to set verdict aside as a nullity, and was heard three times on appeal by the court of last resort, and in all instances the trial court was affirmed. Petitioner alleged that a hostile public sentiment improperly influenced the trial court and jury against him and in the court-room took the form of mob domination; that his lawful rights were interfered with because he was not permitted to be present when the verdict was rendered. The state courts however held, on evidence presumably justifying such a finding but not produced in the *habeas corpus* proceeding, that the allegations as to mob violence and influence were not sustained and that the objection as to absence on rendering the verdict had been waived by failure to raise it in due season when fully informed as to the facts. Petitioner then applied to the District Court of the United States for release on *habeas corpus* on the ground that the conditions alleged to have existed in the court-room amounted to mob domination and de-

prived the court of jurisdiction to receive a verdict and pronounce sentence against him, that his involuntary absence from the court-room was a deprivation of an essential part of the right of trial by jury, and amounted to a denial of due process of law and that the decision of the state court overruling his objections to his enforced absence from court on rendition of verdict was so far inconsistent with previous decisions of the same court as to be equivalent in effect to an *ex post facto* law. His petition was denied and an appeal allowed by a justice of this court. *Held* by this court that:

The question of deprivation of liberty without due process of law involves not the jurisdiction of any particular court, but the power and authority of the State itself, and where there is no claim that the offense is based on an unconstitutional statute, the question of whether the petitioner in *habeas corpus* has been deprived of his liberty in violation of constitutional rights cannot be determined, with fairness to the State, until the conclusion of the course of justice in its own courts, and the United States courts must consider not merely the proceedings of the trial court, but also those in the appellate court of the State.

Due process of law guaranteed by the Fourteenth Amendment has regard to substance of right and not to matters of form and procedure; and in determining whether one convicted of crime has been denied due process, the entire course of proceedings, and not merely a single step, must be considered.

Although petitioner's allegation that mob domination existed in the trial court might, standing alone and if taken as true, show a condition inconsistent with due process of law, if the record in the *habeas corpus* proceedings in the Federal court also shows that the same allegations had been considered by the state court and upon evidence there taken but not disclosed in the Federal court, had been found to be groundless, that finding cannot be regarded as a nullity but must be taken as setting forth the truth until reasonable ground is shown for a contrary conclusion.

The due process of law clause of the Fourteenth Amendment does not preclude a State from adopting and enforcing a rule of procedure that an objection to absence of the prisoner from the court-room on rendition of verdict by the jury cannot be taken on motion to set aside the verdict as a nullity after a motion for new trial had been made on other grounds, not including this one, and denied. Such a regulation of practice is not unreasonable.

The due process of law clause of the Fourteenth Amendment does not impose upon the State any particular form or mode of

procedure so long as essential rights of notice and hearing or opportunity to be heard before a competent tribunal are not interfered with; and it is within the power of the State to establish a rule of practice that a defendant may waive his right to be present on rendition of verdict.

The right of the State to abolish jury trial altogether without violation of the Fourteenth Amendment includes the right to limit the effect to be given to an error respecting an incident of such trial—such as the presence of defendant when the jury renders its verdict.

The prohibition in the Federal Constitution against a State passing an *ex post facto* law is directed against legislative action only, and does not reach erroneous or inconsistent decisions of the courts of the State.

The petitioner in this case was not denied due process of law in the conduct of his trial by the courts of first instance or appellate, nor was the decision of the appellate court, by reason of inconsistency with prior decisions, equivalent to an *ex post facto* law.

LEO M. FRANK, the present appellant, being a prisoner in the custody of the Sheriff in the jail of Fulton County, Georgia, presented to the District Court of the United States for the Northern District of Georgia his petition for a writ of *habeas corpus* under Rev. Stat., § 753, upon the ground that he was in custody in violation of the Constitution of the United States, especially that clause of the Fourteenth Amendment which declares that no State shall deprive any person of life, liberty, or property without due process of law. The District Court, upon consideration of the petition and accompanying exhibits, deeming that upon his own showing petitioner was not entitled to the relief sought, refused to award the writ. Whether this refusal was erroneous is the matter to be determined upon the present appeal.

From the petition and exhibits it appears that in May, 1913, Frank was indicted by the grand jury of Fulton County for the murder of one Mary Phagan; he was arraigned before the Superior Court of that county, and,

on August 25, 1913, after a trial lasting four weeks, in which he had the assistance of several attorneys, the jury returned a verdict of guilty. On the following day, the court rendered judgment sentencing him to death and remanding him, meanwhile, to the custody of the sheriff and jailer, the present appellee. On the same day, the prisoner's counsel filed a written motion for a new trial, which was amended about two months thereafter so as to include 103 different grounds particularly specified. Among these were several raising the contention that defendant did not have a fair and impartial trial, because of alleged disorder in and about the court-room including manifestations of public sentiment hostile to the defendant sufficient to influence the jury. In support of one of these, and to show the state of sentiment as manifested, the motion stated: "The defendant was not in the court room when the verdict was rendered, his presence having been waived by his counsel. This waiver was accepted and acquiesced in by the court, because of the fear of violence that might be done the defendant were he in court when the verdict was rendered." But the absence of defendant at the reception of the verdict, although thus mentioned, was not specified or relied upon as a ground for a new trial. Numerous affidavits were submitted by defendant in support of the motion, including 18 that related to the allegations of disorder; and rebutting affidavits were submitted by the State. The trial court, having heard argument, denied the motion on October 31. The cause was then taken on writ of error to the Supreme Court of Georgia, where the review included not only alleged errors in admission and exclusion of evidence, and instructions to the jury, but also a consideration of the allegations of disorder in and about the court-room and the supporting and rebutting proofs. On February 17, 1914, the judgment of conviction was affirmed. (141 Georgia, 243.)

Concerning the question of disorder, the findings and conclusions of the court were, in substance (141 Georgia, 280): That the trial court, from the evidence submitted, was warranted in finding that only two of the alleged incidents occurred within the hearing or knowledge of the jury. 1. Laughter by spectators while the defense was examining one of its witnesses; there being nothing to indicate what provoked it, other than a witty answer by the witness or some other innocuous matter. The trial court requested the sheriff to maintain order, and admonished those present that if there was further disorder nobody would be permitted in the court-room on the following day. The Supreme Court held that, in the absence of anything showing a detrimental effect, there was in this occurrence no sufficient ground for a new trial. 2. Spectators applauded the result of a colloquy between the solicitor general and counsel for the accused. The latter complained of this conduct, and requested action by the court. The Supreme Court said: "The [trial] court directed the sheriff to find out who was making the noise, and, presumably from what otherwise appears in the record, the action by the court was deemed satisfactory at the time, and the orderly progress of the case was resumed without any further action being requested. The general rule is that the conduct of a spectator during the trial of a case will not be ground for a reversal of the judgment, unless a ruling upon such conduct is invoked from the judge at the time it occurs. [Citing cases]. . . The applause by the spectators, under the circumstances as described in the record, is but an irregularity not calculated to be substantially harmful to the defendant; and even if the irregularity should be regarded as of more moment than we give it, we think the action of the court, as a manifestation of the judicial disapproval, was a sufficient cure for any possible harmful effect of the irregularity, and deemed so sufficient by the counsel who,

at the time, made no request for further action by the court."

As to disorder during the polling of the jury, the court said (141 Georgia, p. 281): "Just before the jury was ushered into the court's presence for the purpose of rendering their verdict, the court had the room cleared of spectators. The verdict of the jury was received and published in the usual manner. A request was made to poll the jury, and just after the polling had begun loud cheering from the crowd in the streets adjacent to the court-house was heard. This cheering continued during the polling of the jury. The plaintiff in error insists that the cheering on the outside of the court-room, which was loud, and which was heard by the jury, could not have been interpreted otherwise than as expressive of gratification at the verdict which had been rendered, and of which the crowd on the outside had in some way been informed, and was so coercive in character as to affect the fairness of the poll of the jury which was taken. . . . [p. 282]. In order that the occurrence complained of shall have the effect of absolutely nullifying the poll of the jury taken before they dispersed, it must appear that its operation upon the minds of the jury, or some of them, was of such a controlling character that they were prevented, or likely to have been prevented, from giving a truthful answer to the questions of the court. We think that the affidavits of jurors submitted in regard to this occurrence were sufficient to show that there was no likelihood that there was any such result. Under such circumstances we do not think that the occurrence complained of amounts to more than an irregularity, which was not prejudicial to the accused. There is a wide difference between an irregularity produced by the juror himself, or by a party, and the injection into a trial of an occurrence produced by some one having no connection therewith."

After this decision by the Supreme Court, an extraor-

dinary motion for a new trial was made under Georgia Code 1910, §§ 6089, 6092, upon the ground of newly discovered evidence; and this having been refused, the case was again brought before the Supreme Court, and the action of the trial court affirmed on October 14, 1914 (142 Georgia, 617; *S. C.*, 83 S. E. Rep. 233).

On April 16, 1914, more than six months after his conviction, Frank for the first time raised the contention that his absence from the court-room when the verdict was rendered was involuntary, and that this vitiated the result. On that day, he filed in the Superior Court of Fulton County a motion to set aside the verdict as a nullity [1] on this ground (among others); stating that he did not waive the right to be present nor authorize anybody to waive it for him; that on the day the verdict was rendered, and shortly before the presiding judge began his charge to the jury, the judge privately conversed with two of the prisoner's counsel, referred to the probable danger of violence to the prisoner if he were present when the verdict was rendered, in case it should be one of acquittal, or if the jury should disagree, and requested counsel to agree that the prisoner need not be present when the verdict was rendered and the jury polled; that in the same conversation the judge expressed the view that even counsel might be in danger of violence should they be present at the reception of the verdict, and under these circumstances they agreed that neither they nor the prisoner should be present, but the prisoner knew nothing of the conversation

---

[1] The constitution of Georgia provides (Art. 1, § 1, Par. 8; Code 1911, § 6364): "No person shall be put in jeopardy of life, or liberty, more than once for the same offence, *save on his or her motion for a new trial* after conviction, or in case of mistrial." In some cases a distinction has been taken between a motion for a new trial, and a motion to set aside the verdict as a nullity. It seems that if a motion of the latter kind is granted upon grounds such as were here urged, defendant, if again put upon trial, can plead former jeopardy. *Nolan* v. *State*, 55 Georgia, 521; *Bagwell* v. *State*, 129 Georgia, 170.

or agreement until after the verdict and sentence; and
that the reception of the verdict during the involuntary
absence of defendant and his counsel was a violation of
that provision of the constitution of the State of Georgia
guaranteeing the right of trial by jury, and was also con-
trary to the "due process of law" clause of the Fourteenth
Amendment. The motion was also based upon allegations
of disorder in the court-room and in the adjacent street,
substantially the same as those previously submitted in
the first motion for a new trial. To this motion to set aside
the verdict the State interposed a demurrer, which, upon
hearing, was sustained by the Superior Court; and upon
exception taken and error assigned by Frank, this judg-
ment came under review before the Supreme Court, and,
on November 14, 1914, was affirmed (83 S. E. Rep. 645;
142 Ga. 741).

The grounds of the decision were, briefly: That by the
law of Georgia it is the right of a defendant on trial upon a
criminal indictment to be present at every stage of the
trial, but he may waive his presence at the reception of
the verdict (citing *Cawthon* v. *State*, 119 Georgia, 395,
412); that a defendant has the right by motion for a new
trial to review an adverse verdict and judgment for il-
legality or irregularity amounting to harmful error in the
trial, but where such a motion is made it must include all
proper grounds which are at the time known to the de-
fendant or his counsel, or by reasonable diligence could
have been discovered (citing *Leathers* v. *Leathers*, 138
Georgia, 740); that objections to the reception of a verdict
during the enforced absence of defendant without his
consent, or to the taking by the trial court of other steps
in his absence and without his consent, can be made in a
motion for a new trial (citing *Wade* v. *State*, 12 Georgia,
25; *Martin* v. *State*, 51 Georgia, 567; *Bonner* v. *State*, 67
Georgia, 510; *Wilson* v. *State*, 87 Georgia, 583; *Tiller* v.
*State*, 96 Georgia, 430; and *Hopson* v. *State*, 116 Georgia,

90), and in such case the verdict rendered against the defendant will not be treated as a nullity; but will be set aside and a new trial granted; and since Frank and his counsel, when the motion for a new trial was made, were fully aware of the facts respecting his absence when the verdict of guilty was rendered against him, the failure to include this ground in that motion precluded him, after denial of the motion and affirmance of the judgment by the Supreme Court, from seeking upon that ground to set aside the verdict as a nullity. Respecting the allegations of disorder, the court held that the questions raised were substantially the same that were presented when the case was under review upon the denial of the first motion for a new trial (141 Georgia, 243), at which time they were adjudicated adversely to the contentions of defendant, and the court therefore declined to reconsider them. The result was an affirmance of the judgment of the trial court denying the motion to set aside the verdict.

Shortly after this decision, Frank unsuccessfully applied to the Supreme Court of Georgia for the allowance of a writ of error to review its judgment in this court. Thereafter he applied to several of the justices of this court, and finally to the court itself, for the allowance of such a writ. These applications were severally denied. (See 235 U. S. 694.)

Thereupon his application for a writ of *habeas corpus* was made to the District Court, with the result already mentioned. The petition purports to set forth the criminal proceedings pursuant to which appellant is detained in custody, including the indictment, the trial and conviction, the motions, and the appeals above set forth. It contains a statement in narrative form of the alleged course of the trial, including allegations of disorder and manifestations of hostile sentiment in and about the courtroom, and states that Frank was absent at the time the verdict was rendered without his consent, pursuant to a

suggestion from the trial judge to his counsel to the effect that there was probably danger of violence to Frank and to his counsel if he and they were present and there should be a verdict of acquittal or a disagreement of the jury; and that under these circumstances they consented (but without Frank's authority) that neither he nor they should be present at the rendition of the verdict. From the averments of the petition it appears that the same allegations were made the basis of the first motion for a new trial, and also for the motion of April 16, 1914, to set aside the verdict. Accompanying the petition, as an exhibit, was a copy of Frank's first motion for a new trial and the supporting affidavits.. The rebutting affidavits were not included, nor were they in any way submitted to the District Court; therefore, of course, they have not been brought before this court upon the present appeal. The petition refers to the opinion of the Georgia Supreme Court affirming the conviction and the denial of the motion for a new trial (141 Georgia, 243); it also refers to the opinion upon the affirmance of the motion to set aside the verdict as a nullity (83 S. E. Rep. 645), and a copy of this was submitted to the District Court as an exhibit. From these opinions, and from the order of the Superior Court denying the motion for new trial, which is included among the exhibits, it appears that the rebutting affidavits were considered and relied upon by both of the state courts as the basis of their findings upon the questions of fact.

*Mr. Louis Marshall*, with whom *Mr. Henry C. Peeples* and *Mr. Henry A. Alexander* were on the brief, for appellant:

The reception by the Superior Court of Fulton County of the verdict by which the appellant was condemned to death, in his absence and without his consent or authority, and in the absence of his counsel, was such a violation of due process of law, within the meaning of the Fourteenth

Amendment to the Constitution of the United States, as to bring about a loss of jurisdiction of the court and the nullification of the verdict and judgment. *Hovey* v. *Elliott,* 167 U. S. 409; *Windsor* v. *McVeigh,* 93 U. S. 274; *B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226; *Scott* v. *McNeal,* 154 U. S. 34; *Standard Oil Co.* v. *Missouri,* 224 U. S. 270, 280–282; *Ex parte Riggins,* 134 Fed. Rep. 404; *Central of Georgia Ry.* v. *Wright,* 207 U. S. 127; *Londoner* v. *Denver,* 210 U. S. 385; *Denver* v. *State Investment Co.,* 49 Colorado, 244; *S. C.,* 112 Pac. Rep. 789; *Ong Chang Wing* v. *United States,* 218 U. S. 280, distinguishing *Hurtado* v. *California,* 110 U. S. 516; *Allen* v. *Georgia,* 166 U. S. 138; *Brown* v. *New Jersey,* 175 U. S. 172; *Maxwell* v. *Dow,* 176 U. S. 581; *Simon* v. *Craft,* 182 U. S. 427; *West* v. *Louisiana,* 194 U. S. 258; *Howard* v. *Kentucky,* 200 U. S. 164; *Twining* v. *New Jersey,* 211 U. S. 78; *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322; *Jordan* v. *Massachusetts,* 225 U. S. 167; *Garland* v. *Washington,* 232 U. S. 642.

The right of the accused to be present at every stage of his trial, including the reception of the verdict, is essential to the right to be heard. *Nolan* v. *State,* 55 Georgia, 522; *Prine* v. *Commonwealth,* 18 Pa. St. 103; *Lewis* v. *United States,* 146 U. S. 372; *Rex* v. *Ladsingham,* Sir T. Raym. 193; *Dunn* v. *Commonwealth,* 6 Pa. St. 384; *Temple* v. *Commonwealth,* 14 Bush (Ky.), 769; *Rhodes* v. *State,* 128 Indiana, 189; 2 Moore on Facts, §§ 991–995; Cooley's Const. Lim., 2d ed., § 452; McGehee on Due Process, pp. 164, 165, 168; 1 Bishop's New Cr. Proc., 1913, §§ 265–274; *Nolan* v. *State,* 53 Georgia, 137; *Bonner* v. *State,* 67 Georgia, 510; *Barton* v. *State,* 67 Georgia, 653; *Bagwell* v. *State,* 129 Georgia, 170; *Cawthon* v. *State,* 119 Georgia, 395; *Lyons* v. *State,* 7 Ga. App. 50; *Hopt* v. *Utah,* 110 U. S. 574; *Ball* v. *United States,* 140 U. S. 118; *Schwab* v. *Berggren,* 143 U. S. 442, 448; *Dowdell* v. *United States,* 221 U. S. 321; *Diaz* v. *United States,* 223 U. S. 442, 455, and the decisions of the courts of twenty-eight States.

Not only was the appellant deprived of due process of law, because he was by the action of the court, kept out of the court-room when the verdict was rendered, but the entire proceedings became *coram non judice,* because of mob domination, to which the presiding judge succumbed and which in effect wrought a dissolution of the court. *People* v. *Wolf,* 183 N. Y. 472; 5 Cyc. U. S. S. C. Rep. 618, and cases cited; *Massey* v. *State,* 31 Tex. Cr. Rep. 371; *State* v. *Welden,* 91 S. Car. 29; *Sanders* v. *State,* 85 Indiana, · 319; *People* v. *Fleming,* 136 Pac. Rep. 291; *Myers* v. *State,* 97 Georgia, 76; *Collier* v. *State,* 115 Georgia, 803; *Ex parte Riggins,* 134 Fed. Rep. 404; *Ellerbee* v. *State,* 75 Mississippi, 522; *Blend* v. *People,* 41 N. Y. 604; *People* v. *Shaw,* 3 Hun, 272, aff'd 63 N. Y. 36; *Hinman* v. *People,* 13 Hun, 266; *Hayes* v. *Georgia,* 58 Georgia, 35; *O'Brien* v. *People,* 17 Colorado, 561; *McClure* v. *State,* 77 Indiana, 287; *Pennoyer* v. *Neff,* 95 U. S. 714; *United States* v. *Shipp,* 203, U. S. 563.

The right of the prisoner to be present during the entire trial, including the time of the rendition of the verdict, the polling of the jury, and its discharge, is one which neither he nor his counsel could waive or abjure. *Barton* v. *State,* 67 Georgia, 653; *Robson* v. *State,* 83 Georgia, 171; *Cawthon* v. *State,* 119 Georgia, 395; *Lyons* v. *State,* 7 Ga. App. 50; *Hopt* v. *Utah,* 110 U. S. 579; *Schwab* v. *Berggren,* 143 U. S. 449; *Lewis* v. *United States,* 146 U. S. 373; *Thompson* v. *Utah,* 170 U. S. 343; *Kepner* v. *United States,* 195 U. S. 100, 135; *Cancemi* v. *People,* 18 N. Y. 128; *Ball* v. *United States,* 140 U. S. 118; *Dickinson* v. *United States,* 159 Fed. Rep. 801; *Diaz* v. *United States,* 223 U. S. 456.

It would seem to follow logically from the propositions thus far discussed that if neither Frank nor his counsel could expressly waive his right to be present at the rendition of the verdict, that right could not be waived by implication or in consequence of any pretended ratification by him or acquiescence on his part in any action taken by his counsel. *Thompson* v. *Utah,* 170 U. S. 343.

If, therefore, Frank's absence at the reception of the verdict constituted an infraction of due process of law, which could not be waived, directly or indirectly, expressly or impliedly, before or after the rendition of the verdict, the fact that he did not raise the jurisdictional question on his motion for a new trial, did not deprive him of his constitutional right to attack the judgment as a nullity.

Even if the decision of the Supreme Court of Georgia were to be interpreted as deciding that a motion for a new trial is the only method by which the constitutional question with which we are now concerned can be raised, then, we contend, that such a decision as applicable to the present case would be in conflict with the Constitution of the United States, because it would be an *ex post facto* law. *Nolan* v. *State*, 53 Georgia, 137; *Lyons* v. *State*, 7 Ga. App. 50; *Rawlins* v. *Mitchell*, 127 Georgia, 24; *Hopt* v. *Utah*, 110 U. S. 579; Laws of Georgia, Acts of 1858, p. 74, Georgia Code, 1882, § 217; Georgia Code, 1910, § 6207; *Muhlker* v. *N. Y. & H. R. Co.*, 197 U. S. 544.

It follows from the propositions thus far discussed that appellant's application for a writ of *habeas corpus* is squarely based on the contention that, when the verdict against him was received and judgment was rendered against him the court had lost such jurisdiction as it previously possessed, and the verdict and judgment under which he was detained were absolute nullities, thus making *habeas corpus* the proper remedy to test the validity of his detention thereunder. Rev. Stat., §§ 751–756; *Matter of Hans Nielsen*, 131 U. S. 176; *Ex parte Bain*, 121 U. S. 1; *In re Bonner*, 151 U. S. 242, 256; *Felts* v. *Murphy*, 201 U. S. 123; *Valentina* v. *Mercer*, 201 U. S. 131; *Rogers* v. *Peck*, 199 U. S. 425; *Ex parte Bridges*, 2 Woods, 428; *S. C.*, 4 Fed. Cas. 105, 106; *McClaughry* v. *Deming*, 186 U. S. 49; *Oakley* v. *Aspinwall*, 3 N. Y. 547; *Kaizo* v. *Henry*, 211

U. S. 146; *Harlan* v. *McGourin*, 218 U. S. 442; *Stevens* v. *McClaughry*, 207 Fed. Rep. 18; *Matter of Spencer*, 228 U. S. 652; *Rogers* v. *Alabama*, 192 U. S. 226, 230.

The appellant had, before applying for a writ of *habeas corpus*, exhausted all of his remedies in the state courts, and had ineffectually applied for a writ of error to review their determination. This remedy invoking the Federal Constitution for the protection of his life is, therefore, his last resort, and he conforms in every respect to the practice which this court has pointed out as controlling in like cases. *Ex parte Royall*, 117 U. S. 241; *Ex parte Charles W. Fonda,* 117 U. S. 516; *Wood* v. *Brush*, 140 U. S. 278; *Cook* v. *Hart*, 146 U. S. 183; *Ex parte Frederich*, 149 U. S. 70; *New York* v. *Eno*, 155 U. S. 89, 95; *Pepke* v. *Cronan*, 155 U. S. 100; *In re Chapman*, 156 U. S. 211; *Whitten* v. *Tomlinson*, 160 U. S. 231; *Baker* v. *Grice*, 169 U. S. 284; *Tinsley* v. *Anderson*, 171 U. S. 101; *Fitts* v. *McGhee*, 172 U. S. 516; *Markuson* v. *Boucher*, 175 U. S. 184; *Minnesota* v. *Brundage*, 180 U. S. 499; *Urquhart* v. *Brown*, 205 U. S. 179; *Glasgow* v. *Moyer*, 225 U. S. 420; *Ex parte Spencer*, 228 U. S. 652; *Stevens* v. *McClaughry*, 207 Fed. Rep. 18; *Nolan* v. *State*, 53 Georgia, 136; *Nolan* v. *State*, 55 Georgia, 521; Georgia Laws, 1906, p. 24, Georgia Code, 1910, § 6506; *Lyons* v. *State*, 7 Ga. App. 50; Georgia Code, 1873, § 3719; Georgia Code, 1910, § 6089; *Lampkin* v. *State*, 87 Georgia, 517.

Judge Newman entirely misconceived the decisions which led to the denial of a writ of error to review the judgment of the Supreme Court of Georgia, and misapplied them. *Waters-Pierce Oil Co.* v. *Texas*, 212 U. S. 112; *Allen* v. *Arguimbau*, 198 U. S. 149; *Garr, Scott & Co.* v. *Shannon*, 223 U. S. 458.

In the present case, the Superior Court of Georgia had jurisdiction over the appellant after his indictment and down to the later stages of his trial. The verdict and all subsequent proceedings, being nullities, he is entitled

to his discharge from the void judgment and to be relieved from the void sentence of death. He does not, however, contend that he cannot be held for further trial under the indictment. *Ex parte Badgley*, 7 Cowen, 472; *Medley, Petitioner*, 134 U. S. 160, 174; *In re Bonner*, 151 U. S. 256–259, 261, 262; *Ex parte Scott*, 70 Mississippi, 247; *People ex rel. Devoe* v. *Kelly*, 97 N. Y. 212; *Michaelson* v. *Beemer*, 72 Nebraska, 761.

*Mr. Warren Grice* and *Mr. Hugh M. Dorsey*, for appellee:

Appellant is asking this court to grant him a writ of *habeas corpus* which will virtually overturn his conviction in the state court without submitting to the United States courts important portions of the record on which the judgment is based, and on which he is being held.

The decision of the Supreme Court of Georgia holding that Frank had not adopted the correct procedure in invoking in the state court the effect of his absence when the verdict was received was not the passage of an *ex post facto* law but followed prior decisions.

Every question presented by the application for *habeas corpus* having already been presented by him to the state court and its decision invoked and its judgment rendered adverse to him, the principle of *res judicata* applies and for that reason alone the questions cannot be reopened here.

Where oral evidence is required to show want of jurisdiction, *habeas corpus* will not discharge the prisoner.

The writ of *habeas corpus* cannot be made use of to perform the functions of a writ of error.

Irregularities, no matter how gross, will not be sufficient to obtain a release on *habeas corpus*.

The due process clause in the Fourteenth Amendment does not overturn well settled principles and established usages prevailing in States, nor deprive the States of the

power to establish other systems of law and procedure, or alter the same at their will.

The Fourteenth Amendment does not require the presence of a defendant in court at the reception of a verdict as such presence does not go to the jurisdiction of the court.

Waivers such as were made in this case by the prisoner's counsel are binding on the prisoner.

Petitioner Frank cannot repudiate the acts of his counsel.

The Supreme Court of the United States will not grant the relief asked by Frank in this application in view of what has heretofore taken place in the Supreme Court of Georgia and by the Supreme Court of the United States in denying him a writ of error.

The Supreme Court of the United States will not permit Frank to do by indirection that which it already has held Frank could not do directly.

The Supreme Court of Georgia had jurisdiction to determine whether Frank's counsel could waive his presence, and even if this court should think that ruling error, *habeas corpus* cannot correct it.

The action of the court in permitting Frank's counsel to waive his presence, if erroneous, was a mere irregularity in the matter of procedure, and certainly *habeas corpus* cannot avail to discharge the prisoner.

Numerous authorities support these propositions.

MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.

The points raised by the appellant may be reduced to the following:

(1) It is contended that the disorder in and about the court-room during the trial and up to and at the reception of the verdict amounted to mob domination, that not only

the jury but the presiding judge succumbed to it, and that this in effect wrought a dissolution of the court, so that the proceedings were *coram non judice.*

(2) That Frank's right to be present during the entire trial until and at the return of the verdict was an essential part of the right of trial by jury, which could not be waived either by himself or his counsel.

(3) That his presence was so essential to a proper hearing that the reception of the verdict in his absence, and in the absence of his counsel, without his consent or authority, was a departure from the due process of law guaranteed by the Fourteenth Amendment, sufficient to bring about a loss of jurisdiction of the trial court and to render the verdict and judgment absolute nullities.

(4) That the failure of Frank and his counsel, upon the first motion for a new trial, to allege as a ground of that motion the known fact of Frank's absence at the reception of the verdict, or to raise any jurisdictional question based upon it, did not deprive him of the right to afterwards attack the judgment as a nullity, as he did in the motion to set aside the verdict.

(5) And that the ground upon which the Supreme Court of Georgia rested its decision affirming the denial of the latter motion (83 S. E. Rep. 645),—viz., that the objection based upon Frank's absence when the verdict was rendered was available on the motion for new trial and under proper practice ought to have been then taken, and because not then taken could not be relied upon as a ground for setting aside the verdict as a nullity,—was itself in conflict with the Constitution of the United States because equivalent in effect to an *ex post facto* law, since, as is said, it departs from the practice settled by previous decisions of the same court.

In dealing with these contentions, we should have in mind the nature and extent of the duty that is imposed upon a Federal court on application for the writ of *habeas*

*corpus* under § 753, Rev. Stat. Under the terms of that section, in order to entitle the present appellant to the relief sought, it must appear that he is held in custody in violation of the Constitution of the United States. *Rogers* v. *Peck*, 199 U. S. 425, 434. Moreover, if he is held in custody by reason of his conviction upon a criminal charge before a court having plenary jurisdiction over the subject-matter or offense, the place where it was committed, and the person of the prisoner, it results from the nature of the writ itself that he cannot have relief on *habeas corpus*. Mere errors in point of law, however serious, committed by a criminal court in the exercise of its jurisdiction over a case properly subject to its cognizance, cannot be reviewed by *habeas corpus*. That writ cannot be employed as a substitute for the writ of error. *Ex parte Parks,* 93 U. S. 18, 21; *Ex parte Siebold*, 100 U. S. 371, 375; *Ex parte Royall*, 117 U. S. 241, 250; *In re Frederich, Pet'r,* 149 U. S. 70, 75; *Baker* v. *Grice*, 169 U. S. 284, 290; *Tinsley* v. *Anderson*, 171 U. S. 101, 105; *Markuson* v. *Boucher*, 175 U. S. 184.

As to the "due process of law" that is required by the Fourteenth Amendment, it is perfectly well settled that a criminal prosecution in the courts of a State, based upon a law not in itself repugnant to the Federal Constitution, and conducted according to the settled course of judicial proceedings as established by the law of the State, so long as it includes notice, and a hearing, or an opportunity to be heard, before a court of competent jurisdiction, according to established modes of procedure, is "due process" in the constitutional sense. *Walker* v. *Sauvinet*, 92 U. S. 90, 93; *Hurtado* v. *California*, 110 U. S. 516, 535; *Andrews* v. *Swartz*, 156 U. S. 272, 276; *Bergemann* v. *Backer*, 157 U. S. 655, 659; *Rogers* v. *Peck*, 199 U. S. 425, 434; *Drury* v. *Lewis*, 200 U. S. 1, 7; *Felts* v. *Murphy*, 201 U. S. 123, 129; *Howard* v. *Kentucky*, 200 U. S. 164.

It is, therefore, conceded by counsel for appellant that

in the present case we may not review irregularities or erroneous rulings upon the trial, however serious, and that the writ of *habeas corpus* will lie only in case the judgment under which the prisoner is detained is shown to be ab-- solutely void for want of jurisdiction in the court that pronounced it, either because such jurisdiction was absent at the beginning or because it was lost in the course of the proceedings. And since no question is made re- specting the original jurisdiction of the trial court, the contention is· and must be that by the conditions that surrounded the trial, and the absence of defendant when the verdict was rendered, the court was deprived of juris- diction to receive the verdict and pronounce the sentence.

But it would be clearly erroneous to confine the inquiry to the proceedings and judgment of the trial court. The laws of the State of Georgia (as will appear from decisions elsewhere cited), provide for an appeal in criminal cases to the Supreme Court of that State upon divers grounds, including such as those upon· which it is here asserted that the trial court was lacking in jurisdiction. And while the Fourteenth Amendment does not require that a State shall provide for an appellate review in criminal cases (*McKane* v. *Durston,* 153 U. S. 684, 687; *Andrews* v. *Swartz,* 156 U. S. 272, 275; *Rogers* v. *Peck,* 199 U. S. 425, 435;. *Reetz* v. *Michigan,* 188 U. S. 505, 508), it is perfectly obvious that where such an appeal is provided for, and the prisoner has had the benefit of it; the proceedings in the appellate tribunal are to be regarded as a part of the proc- ess of law under which he is held in custody by the State, and to .be considered in determining any question of ·al- leged deprivation of his life or liberty contrary to the Four- teenth Amendment.

In fact, such questions as are here presented under the due process clause of the Fourteenth Amendment, though sometimes discussed as if involving merely the jurisdiction of some ·court or other tribunal, in a. larger and more ac-

curate sense involve the power and authority of the State itself. The prohibition is addressed to the State; if it be violated, it makes no difference in a court of the United States by what agency of the State this is done; so, if a violation be threatened by one agency of the State but prevented by another agency of higher authority, there is no violation by the State. It is for the State to determine what courts or other tribunals shall be established for the trial of offenses against its criminal laws, and to define their several jurisdictions and authority as between themselves. And the question whether a State is depriving a prisoner of his liberty without due process of law, where the offense for which he is prosecuted is based upon a law that does no violence to the Federal Constitution, cannot ordinarily be determined, with fairness to the State, until the conclusion of the course of justice in its courts. *Virginia v. Rives*, 100 U. S. 313, 318; *Civil Rights Cases*, 109 U. S. 3, 11; *McKane v. Durston*, 153 U. S. 684, 687; *Dreyer v. Illinois*, 187 U. S. 71, 83–84; *Reetz v. Michigan*, 188 U. S. 505, 507; *Carfer v. Caldwell*, 200 U. S. 293, 297; *Waters-Pierce Oil Co. v. Texas* (No. 1), 212 U. S. 86, 107; *In re Frederich, Petitioner*, 149 U. S. 70, 75; *Whitten v. Tomlinson*, 160 U. S. 231, 242; *Baker v. Grice*, 169 U. S. 284, 291; *Minnesota v. Brundage*, 180 U. S. 499, 503, *Urquhart v. Brown*, 205 U. S. 179, 182.

It is, indeed, settled by repeated decisions of this court that where it is made to appear to a court of the United States that an applicant for *habeas corpus* is in the custody of a state officer in the ordinary course of a criminal prosecution, under a law of the State not in itself repugnant to the Federal Constitution, the writ, in the absence of very special circumstances, ought not to be issued until the state prosecution has reached its conclusion, and not even then until the Federal questions arising upon the record have been brought before this court upon writ of error. *Ex parte Royall*, 117 U. S. 241, 251; *In re Frederich*,

*Petitioner,* 149 U. S. 70, 77; *Whitten* v. *Tomlinson,* 160 U. S. 231, 242; *Baker* v. *Grice,* 169 U. S. 284, 291; *Tinsley* v. *Anderson,* 171 U. S. 101, 105; *Markuson* v. *Boucher,* 175 U. S. 184; *Urquhart* v. *Brown,* 205 U. S. 179. And see *Henry* v. *Henkel,* 235 U. S. 219, 228. Such cases as *In re Loney,* 134 U. S. 372, 376; and *In re Neagle,* 135 U. S. 1; are recognized as exceptional.

It follows as a logical consequence that where, as here, a criminal prosecution has proceeded through all the courts of the State, including the appellate as well as the trial court, the result of the appellate review cannot be ignored when afterwards the prisoner applies for his release on the ground of a deprivation of Federal rights sufficient to oust the State of its jurisdiction to proceed to judgment and execution against him. This is not a mere matter of comity, as seems to be supposed. The rule stands upon a much higher plane, for it arises out of the very nature and ground of the inquiry into the proceedings of the state tribunals, and touches closely upon the relations between the state and the Federal governments. As was declared by this court in *Ex parte Royall,* 117 U. S. 241, 252—applying in a *habeas corpus* case what was said in *Covell* v. *Heyman,* 111 U. S. 176, 182, a case of conflict of jurisdiction:—"The forbearance which courts of coördinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and, therefore, of necessity." And see *In re Tyler, Petitioner,* 149 U. S. 164, 186.

It is objected by counsel for appellee that the alleged loss of jurisdiction cannot be shown by evidence outside of the record; that where a prisoner is held under a judg-

ment of conviction passed by a court having jurisdiction of the subject-matter, and the indictment against him states the case and is based upon a valid existing law, *habeas corpus* is not an available remedy, save for want of jurisdiction appearing upon the face of the record of the court wherein he was convicted. The rule at the common law, and under the act 31 Car. II, c. 2, and other acts of Parliament prior to that of July 1, 1816 (56 Geo. III, c. 100, § 3), seems to have been that a showing in the return to a writ of *habeas corpus* that the prisoner was held under final process based upon a judgment or decree of a court of competent jurisdiction, closed the inquiry. So it was held, under the judiciary act of 1789 (ch. 20, § 14, 1 Stat. 73, 81), in *Ex parte Watkins*, 3 Pet. 193, 202. And the rule seems to have been the same under the act of March 2, 1833 (ch. 57, § 7, 4 Stat. 632, 634), and that of Aug. 29, 1842 (ch. 257, 5 Stat. 539). But when Congress, in the act of February 5, 1867 (ch. 28, 14 Stat. 385), extended the writ of *habeas corpus* to all cases of persons restrained of their liberty in violation of the Constitution or a law or treaty of the United States, procedural regulations were included, now found in Rev. Stat., §§ 754–761. These require that the application for the writ shall be made by complaint in writing signed by the applicant and verified by his oath, setting forth the facts concerning his detention, in whose custody he is detained, and by virtue of what claim or authority, if known; require that the return shall certify the true cause of the detention; and provide that the prisoner may under oath deny any of the facts set forth in the return or allege other material facts, and that the court shall proceed in a summary way to determine the facts by hearing testimony and arguments, and thereupon dispose of the party as law and justice require. The effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the

act of 31 Car. II, c. 2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to "dispose of the party as law and justice require."

There being no doubt of the authority of the Congress to thus liberalize the common law procedure on *habeas corpus* in order to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution or a law or treaty established thereunder, it results that under the sections cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him. *Cuddy, Petitioner,* 131 U. S. 280, 283, 286; *In re Mayfield,* 141 U. S. 107, 116; *Whitten.* v. *Tomlinson,* 160 U. S. 231, 242; *In re Watts and Sachs,* 190 U. S. 1, 35.

In the light, then, of these established rules and principles: that the due process of law guaranteed by the Fourteenth Amendment has regard to substance of right, and not to matters of form or procedure; that it is open to the courts of the United States upon an application for a writ of *habeas corpus* to look beyond forms and inquire into the very substance of the matter, to the extent of deciding whether the prisoner has been deprived of his liberty without due process of law, and for this purpose to inquire into jurisdictional facts, whether they appear upon the record or not; that an investigation into the case of a prisoner held in custody by a State on conviction of a criminal offense must take into consideration the entire course of proceedings in the courts of the State, and

not merely a single step in those proceedings; and that it is incumbent upon the prisoner to set forth in his application a sworn statement of the facts concerning his detention and by virtue of what claim or authority he is detained; we proceed to consider the questions presented.

1. And first, the question of the disorder and hostile sentiment that are said to have influenced the trial court and jury to an extent amounting to mob domination.

The District Court having considered the case upon the face of the petition, we must do the same, treating it as if demurred to by the sheriff. There is no doubt of the jurisdiction to issue the writ of *habeas corpus*. The question is as to the propriety of issuing it in the present case. Under § 755, Rev. Stat., it was the duty of the court to refuse the writ if it appeared from the petition itself that appellant was not entitled to it. And see *Ex parte Watkins*, 3 Pet. 193, 201; *Ex parte Milligan*, 4 Wall. 2, 110; *Ex parte Terry*, 128 U. S. 289, 301.

Now the obligation resting upon us, as upon the District Court, to look through the form and into the very heart and substance of the matter, applies as well to the averments of the petition as to the proceedings which the petitioner attacks. We must regard not any single clause or paragraph, but the entire petition, and the exhibits that are made a part of it. Thus, the petition contains a narrative of disorder, hostile manifestations, and uproar, which, if it stood alone, and were to be taken as true, may be conceded to show an environment inconsistent with a fair trial and an impartial verdict. But to consider this as standing alone is to take a wholly superficial view. The narrative has no proper place in a petition addressed to a court of the United States except as it may tend to throw light upon the question whether the State of Georgia, having regard to the entire course of the proceedings, in the appellate as well as in the trial court, is depriving appellant of his liberty and intending to deprive him of his

life without due process of law. Dealing with the narrative, then, in its essence, and in its relation to the context, it clearly appears to be only a reiteration of allegations that appellant had a right to submit, and did submit, first to the trial court, and afterwards to the Supreme Court of the State, as a ground for avoiding the consequences of the trial; that the allegations were considered by those courts, successively, at times and places and under circumstances wholly apart from the atmosphere of the trial, and free from any suggestion of mob domination, or the like; and that the facts were examined by those courts not only upon the affidavits and exhibits submitted in behalf of the prisoner which are embodied in his present petition as a part of his sworn account of the causes of his detention, but also upon rebutting affidavits submitted in behalf of the State and which, for reasons not explained, he has not included in the petition. As appears from the prefatory statement, the allegations of disorder were found by both of the state courts to be groundless except in a few particulars as to which the courts ruled that they were irregularities not harmful in fact to defendant and therefore insufficient in law to avoid the verdict. 141 Georgia, 243, 280. And it was because the defendant was concluded by that finding that the Supreme Court upon the subsequent motion to set aside the verdict declined to again consider those allegations. 83 S. E. Rep. 645, 655.

Whatever question is raised about the jurisdiction of the trial court, no doubt is suggested but that the Supreme Court had full jurisdiction to determine the matters of fact and the questions of law arising out of this alleged disorder; nor is there any reason to suppose that it did not fairly and justly perform its duty. It is not easy to see why appellant is not, upon general principles, bound by its decision. It is a fundamental principle of jurisprudence, arising from the very nature of courts of justice

and the objects for which they are established, that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties. *Southern Pacific Railroad* v. *United States,* 168 U. S. 1, 48. The principle is as applicable to the decisions of criminal courts as to those of civil jurisdiction. As to its application in *habeas corpus* cases, with respect to decisions by such courts of the facts pertaining to the jurisdiction over the prisoner, see *Ex parte Terry,* 128 U. S. 289, 305, 310; *Ex parte Columbia George,* 144 Fed. Rep. 985, 986.

However, it is not necessary, for the purposes of the present case, to invoke the doctrine of *res adjudicata,* and, in view of the impropriety of limiting in the least degree the authority of the courts of the United States in investigating an alleged violation by a State of the due process of law guaranteed by the Fourteenth Amendment, we put out of view for the present the suggestion that even the questions of fact bearing upon the jurisdiction of the trial court could be conclusively determined against the prisoner by the decision of the state court of last resort.

But this does not mean that that decision may be ignored or disregarded. To do this, as we have already pointed out, would be not merely to disregard comity, but to ignore the essential question before us, which is not the guilt or innocence of the prisoner, or the truth of any particular fact asserted by him, but whether the State, taking into view the entire course of its procedure, has deprived him of due process of law. This familiar phrase does not mean that the operations of the state government shall be conducted without error or fault in any particular case, nor that the Federal courts may substitute their judgment for that of the state courts, or exercise any general review over their proceedings, but only that the fundamental rights of the prisoner shall not be taken from him arbitrarily or without the right to

be heard according to the usual course of law in such cases.

We of course agree that if a trial is in fact dominated by a mob, so that the jury is intimidated and the trial judge yields, and so that there is an actual interference with the course of justice, there is, in that court, a departure from due process of law in the proper sense of that term. And if the State, supplying no corrective process, carries into execution a judgment of death or imprisonment based upon a verdict thus produced by mob domination, the State deprives the accused of his life or liberty without due process of law.

But the State may supply such corrective process as to it seems proper. Georgia has adopted the familiar procedure of a motion for a new trial followed by an appeal to its Supreme Court, not confined to the mere record of conviction but going at large, and upon evidence adduced outside of that record, into the question whether the processes of justice have been interfered with in the trial court. Repeated instances are reported of verdicts and judgments set aside and new trials granted for disorder or mob violence interfering with the prisoner's right to a fair trial. *Myers* v. *State*, 97 Georgia 76 (5), 99; *Collier* v. *State*, 115 Georgia, 803.

Such an appeal was accorded to the prisoner in the present case [*Frank* v. *State*, 141 Georgia, 243 (16), 280], in a manner and under circumstances already stated, and the Supreme Court, upon a full review, decided appellant's allegations of fact, so far as matters now material are concerned, to be unfounded. Owing to considerations already adverted to (arising not out of comity merely, but out of the very right of the matter to be decided, in view of the relations existing between the States and the Federal Government), we hold that such a determination of the facts as was thus made by the court of last resort of Georgia respecting the alleged interference with the trial

through disorder and manifestations of hostile sentiment cannot in this collateral inquiry be treated as a nullity, but must be taken as setting forth the truth of the matter, certainly until some reasonable ground is shown for an inference that the court which rendered it either was wanting in jurisdiction, or at least erred in the exercise of its jurisdiction; and that the mere assertion by the prisoner that the facts of the matter are other than the state court upon full investigation determined them to be will not be deemed sufficient to raise an issue respecting the correctness of that determination; especially not, where the very evidence upon which the determination was rested is withheld by him who attacks the finding.

It is argued that if in fact there was disorder such as to cause a loss of jurisdiction in the trial court, jurisdiction could not be restored by any decision of the Supreme Court. This, we think, embodies more than one error of reasoning. It regards a part only of the judicial proceedings, instead of considering the entire process of law. It also begs the question of the existence of such disorder as to cause a loss of jurisdiction in the trial court; which should not be assumed, in the face of the decision of the reviewing court, without showing some adequate ground for disregarding that decision. And these errors grow out of the initial error of treating appellant's narrative of disorder as the whole matter, instead of reading it in connection with the context. The rule of law that in ordinary cases requires a prisoner to exhaust his remedies within the State before coming to the courts of the United States for redress would lose the greater part of its salutary force if the prisoner's mere allegations were to stand the same in law after as before the state courts had passed judgment upon them.

We are very far from intimating that manifestations of public sentiment, or any other form of disorder, calculated to influence court or jury; are matters to be lightly treated.

The decisions of the Georgia courts in this and other cases show that such disorder is repressed, where practicable, by the direct intervention of the trial court and the officers under its command; and that other means familiar to the common-law practice, such as postponing the trial, changing the venue, and granting a new trial, are liberally resorted to in order to protect persons accused of crime in the right to a fair trial by an impartial jury. The argument for appellant amounts to saying that this is not enough; that by force of the "due process of law" provision of the Fourteenth Amendment, when the first attempt at a fair trial is rendered abortive through outside interference, the State, instead of allowing a new trial under better auspices, must abandon jurisdiction over the accused and refrain from further inquiry into the question of his guilt.

To establish this doctrine would, in a very practical sense, impair the power of the States to repress and punish crime; for it would render their courts powerless to act in opposition to lawless public sentiment. The argument is not only unsound in principle but is in conflict with the practice that prevails in all of the States, so far as we are aware. The cases cited do not sustain the contention that disorder or other lawless conduct calculated to overawe the jury or the trial judge can be treated as a dissolution of the court or as rendering the proceedings *coram non judice*, in any such sense as to bar further proceedings. In *Myers* v. *State*, 97 Georgia, 76, (5), 99; *Collier* v. *State,* 115 Georgia, 803; *Sanders* v. *State*, 85 Indiana, 318; *S. C.*, 44 Am. Rep. 29; *Massey* v. *State*, 31 Tex. Cr. Rep. 371, 381; *S. C.*, 20 S. W. Rep. 758; and *State* v. *Weldon*, 91 S. Car. 29, 38; *S. C.*, 39 L. R. A., N. S., 667, 669;—in all of which it was held that the prisoner's right to a fair trial had been interfered with by disorder or mob violence—it was not held that jurisdiction over the prisoner had been lost; on the contrary, in each instance a new trial was

awarded as the appropriate remedy. So, in the cases where
the trial judge abdicated his proper functions or absented
himself during the trial (*Hayes* v. *State*, 58 Georgia, 36
(12), 49; *Blend* v. *People*, 41 N. Y. 604; *Shaw* v. *People*,
3 Hun, 272; aff'd 63 N. Y. 36; *Hinman* v. *People*, 13 Hun,
266; *McClure* v. *State*, 77 Indiana, 287; *O'Brien* v. *People*,
17 Colorado, 561; *Ellerbe* v. *State*, 75 Mississippi, 522; *S. C.*,
41 L. R. A. 569) the reviewing of the State in each in-
stance simply set aside the verdict and awarded a new trial.

The Georgia courts, in the present case, proceeded
upon the theory that Frank would have been entitled
to this relief had his charges been true, and they refused
a new trial only because they found his charges untrue
save in a few minor particulars not amounting to more than
irregularities, and not prejudicial to the accused. There
was here no denial of due process of law.

2. We come, next, to consider the effect to be given to
the fact, admitted for present purposes, that Frank was
not present in the court-room when the verdict was
rendered, his presence having been waived by his counsel,
but without his knowledge or consent. No question is
made but that at the common law and under the Georgia
decisions it is the right of the prisoner to be present through-
out the entire trial, from the commencement of the selec-
tion of the jury until the verdict is rendered and jury dis-
charged. *Wade* v. *State*, 12 Georgia, 25, 29; *Martin* v.
*State*, 51 Georgia, 567; *Nolan* v. *State*, 53 Georgia, 137;
*S. C.*, 55 Georgia, 521; *Smith* v. *State*, 59 Georgia, 513;
*Bonner* v. *State*, 67 Georgia, 510; *Barton* v. *State*, 67
Georgia, 653; *Cawthon* v. *State*, 119 Georgia, 395, 412;
*Bagwell* v. *State*, 129 Georgia, 170; *Lyons* v. *State*, 7 Ga.
App. 50. But the effect of these decisions is that the
prisoner may personally waive the right to be present
when the verdict is rendered, and perhaps may waive it
by authorized act of his counsel; and that where, without
his consent, the verdict is received in his absence, he may

treat this as an error, and by timely motion demand a new trial, or (it seems) he may elect to treat the verdict as a nullity by moving in due season to set it aside as such. But we are unable to find that the courts of Georgia have in any case held that, by receiving a verdict in the absence of the prisoner and without his consent, the jurisdiction of the trial court was terminated. In the *Nolan Case, supra,* the verdict was set aside as void on the ground of the absence of the prisoner; but this was not held to deprive the trial court of its jurisdiction. On the contrary, the jurisdiction was treated as remaining, and that court proceeded to exercise it by arraigning the prisoner a second time upon the same indictment, when he pleaded specially, claiming his discharge because of former jeopardy; the trial court overruled this plea, the defendant excepted, and the jury found the defendant guilty; and, upon review, the Supreme Court reversed this judgment, not for the want of jurisdiction in the trial court, but for error committed in the exercise of jurisdiction. To the same effect is *Bagwell* v. *State, supra.*

In most of the other States, where error is committed by receiving a verdict of guilty during the involuntary absence of the accused, it is treated as merely requiring a new trial. In a few cases, the appellate court has ordered the defendant to be discharged, upon the ground that he had been once in jeopardy and a new trial would be futile.

However, the Georgia Supreme Court in the present case (83 S. E. Rep. 645) held, as pointed out in the prefatory statement, that because Frank, shortly after the verdict, was made fully aware of the facts, and he then made a motion for a new trial upon over 100 grounds, without including this as one, and had the motion heard by both the trial court and the Supreme Court, he could not, after this motion had been finally adjudicated against him, move to set aside the verdict as a nullity because of his absence when the verdict was rendered. There is

nothing in the Fourteenth Amendment to prevent a State from adopting and enforcing so reasonable a regulation of procedure. *Dreyer* v. *Illinois*, 187 U. S. 71, 77–80.

It is insisted that the enforced absence of Frank at that time was not only a deprivation of trial by jury, but was equally a deprivation of due process of law within the meaning of the Amendment, in that it took from him at a critical stage of the proceeding the right or opportunity to be heard. But repeated decisions of this court have put it beyond the range of further debate that the "due process" clause of the Fourteenth Amendment has not the effect of imposing upon the States any particular form or mode of procedure, so long as the essential rights of notice and a hearing, or opportunity to be heard, before a competent tribunal are not interfered with. Indictment by grand jury is not essential to due process (*Hurtado* v. *California*, 110 U. S. 516, 532, 538; *Lem Woon* v. *Oregon*, 229 U. S. 586, 589, and cases cited). Trial by jury is not essential to it, either in civil cases (*Walker* v. *Sauvinet*, 92 U. S. 90), or in criminal (*Hallinger* v. *Davis*, 146 U. S. 314, 324; *Maxwell* v. *Dow*, 176 U. S. 581, 594, 602, 604).

It is argued that a State may not, while providing for trial by jury, permit the accused to waive the right to be heard in the mode characteristic of such trial, including the presence of the prisoner up to and at the time of the rendition of the verdict. But the cases cited do not support this contention. In *Hopt* v. *Utah*, 110 U. S. 574, 578 (principally relied upon), the court had under review a conviction in a territorial court after a trial subject to the local code of criminal procedure, which declared: If "the indictment is for a felony, the defendant *must be* personally present at the trial." The judgment was reversed because of the action of the trial court in permitting certain challenges to jurors, based upon the ground of bias, to be tried out of the presence of the court, the defendant, and his counsel. The ground of the decision of

this court was the violation of the plain mandate of the local statute; and the power of the accused or his counsel to dispense with the requirement as to his personal presence was denied on the ground that his life could not be lawfully taken except in the mode prescribed by law. No other question was involved. See *Diaz* v. *United States,* 223 U. S. 442, 455, 458.

The distinction between what the common law requires with respect to trial by jury in criminal cases, and what the States may enact without contravening the "due process" clause of the Fourteenth Amendment, is very clearly evidenced by *Hallinger* v. *Davis,* 146 U. S. 314, and *Lewis* v. *United States,* 146 U. S. 370, which were under consideration by the court at the same time, both opinions being written by Mr. Justice Shiras. In the *Lewis Case,* which was a conviction of murder in a Circuit Court of the United States, the trial practice being regulated by the common law, it was held to be a leading principle, pervading the entire law of criminal procedure, that after indictment nothing should be done in the absence of the prisoner; that the making of challenges is an essential part of the trial, and it was one of the substantial rights of the prisoner to be brought face to face with the jurors at the time the challenges were made; and that in the absence of a statute, this right as it existed at common law must not be abridged. But in the *Hallinger Case,* where a State by legislative enactment had permitted one charged with a capital offense to waive a trial by jury and elect to be tried by the court, it was held that this method of procedure did not conflict with the Fourteenth Amendment. So in *Howard* v. *Kentucky,* 200 U. S. 164, 175—a case closely in point upon the question now presented— this court, finding that by the law of the State an occasional absence of the accused from the trial, from which no injury resulted to his substantial rights, was not deemed material error, held that the application of this rule of law did not

amount to a denial of due process within the meaning of the Fourteenth Amendment.

In fact, this court has sustained the States in establishing a great variety of departures from the common law procedure respecting jury trials. Thus, in *Brown* v. *New Jersey*, 175 U. S. 172, 176; a statute providing for the trial of murder cases by struck jury was sustained, notwithstanding it did not provide for twenty peremptory challenges. *Simon* v. *Craft*, 182 U. S. 427, 435, while not a criminal case, involved the property of a person alleged to be of unsound mind, and it was held that an Alabama statute, under which the sheriff determined that Mrs. Simon's health and safety would be endangered by her presence at the trial of the question of her sanity, so that while served with notice she was detained in custody and not allowed to be present at the hearing of the inquisition, did not deprive her of property without due process of law. In *Felts* v. *Murphy*, 201 U. S. 123, 129, where the prisoner was convicted of the crime of murder and sentenced to imprisonment for life, although he did not hear a word of the evidence given upon the trial because of his almost total deafness, his inability to hear being such that it required a person to speak through an ear-trumpet close to his ear in order that such person should be heard by him, and the trial court having failed to see to it that the testimony in the case was repeated to him through his ear-trumpet, this court said that this was "at most an error, which did not take away from the court its jurisdiction over the subject-matter and over the person of the accused." In *Twining* v. *New Jersey*, 211 U. S. 78, 101, 111, it was held that the exemption of a prisoner from compulsory self-incrimination in the state courts was not included in the guaranty of due process of law contained in the Fourteenth Amendment. In *Jordan* v. *Massachusetts*, 225 U. S. 167, 177, where one of the jurors was subject to reasonable doubt as to his

sanity, and the state court, pursuant to the local law of criminal procedure, determined upon a mere preponderance of the evidence that he was sane, the conviction was affirmed. In *Garland* v. *Washington,* 232 U. S. 642, 645, it was held that the want of a formal arraignment, treated by the State as depriving the accused of no substantial right and as having been waived and thereby lost, did not amount to depriving defendant of his liberty without due process of law.

Our conclusion upon this branch of the case is, that the practice established in the criminal courts of Georgia: that a defendant may waive his right to be present when the jury renders its verdict, and that such waiver may be given after as well as before the event, and is to be inferred from the making of a motion for new trial upon other grounds alone, when the facts respecting the reception of the verdict are within the prisoner's knowledge at the time of making that motion; is a regulation of criminal procedure that it is within the authority of the State to adopt. In adopting it, the State declares in effect, as it reasonably may declare, that the right of the accused to be present at the reception of the verdict is but an incident of the right of trial by jury; and since the State may, without infringing the Fourteenth Amendment, abolish trial by jury, it may limit the effect to be given to an error respecting one of the incidents of such trial. The presence of the prisoner when the verdict is rendered is not so essential a part of the hearing that a rule of practice permitting the accused to waive it and holding him bound by the waiver amounts to a deprivation of "due process of law."

3. The insistence that the decision of the Supreme Court of Georgia in affirming the denial of the motion to set aside the verdict (83 S. E. Rep. 645) on the ground that Frank's failure to raise the objection upon the motion for a new trial amounted to a waiver of it, was inconsistent with the previous practice as established in *Nolan* v.

*State,* 53 Georgia, 137; *S. C.,* 55 Georgia, 521; and there-
fore amounted in effect to an *ex post facto* law in contra-
vention of § 10 of Article I of the Federal Constitution,
needs but a word.  Assuming the inconsistency, it is suffi-
cient to say that the constitutional prohibition: "No
State shall . . . pass any bill of attainder, *ex post
facto* law, or law impairing the obligation of contracts,"
as its terms indicate, is directed against legislative action
only, and does not reach erroneous or inconsistent de-
cisions by the courts.  *Calder* v. *Bull,* 3 Dall. 386, 389;
*Fletcher* v. *Peck,* 6 Cr. 87, 138; *Kring* v. *Missouri,* 107
U. S. 221, 227; *Thompson* v. *Utah,* 170 U. S. 343, 351;
*Cross Lake Club* v. *Louisiana,* 224 U. S. 632, 638; *Ross*
v. *Oregon,* 227 U. S. 150, 161.

.4.  To conclude: Taking appellant's petition as a whole,
and not regarding any particular portion of it to the ex-
clusion of the rest—dealing with its true and substantial
meaning and not merely with its superficial import—it
shows that Frank, having been formally accused of a
grave crime, was placed on trial before a court of com-
petent jurisdiction, with a jury lawfully constituted;
he had a public trial, deliberately conducted, with the
benefit of counsel for his defense; he was found guilty and
sentenced pursuant to the laws of the State; twice he has
moved the trial court to grant a new trial, and once to set
aside the verdict as a nullity; three times he has been
heard upon appeal before the court of last resort of that
State, and in every instance the adverse action of the trial
court has been affirmed; his allegations of hostile public
sentiment and disorder in and about the court-room,
improperly influencing the trial court and the jury against
him, have been rejected because found untrue in point
of fact upon evidence presumably justifying that finding,
and which he has not produced in the present proceeding;
his contention that his lawful rights were infringed be-
cause he was not permitted to be present when the jury

rendered its verdict, has been set aside because it was waived by his failure to raise the objection in due season when fully cognizant of the facts. In all of these proceedings the State, through its courts, has retained jurisdiction over him, has accorded to him the fullest right and opportunity to be heard according to the established modes of procedure, and now holds him in custody to pay the penalty of the crime of which he has been adjudged guilty. In our opinion, he is not shown to have been deprived of any right guaranteed to him by the Fourteenth Amendment or any other provision of the Constitution or laws of the United States; on the contrary, he has been convicted, and is now held in custody, under "due process of law" within the meaning of the Constitution.

The final order of the District Court, refusing the application for a writ of *habeas corpus,* is

*Affirmed.*

Mr. Justice Holmes with whom concurred Mr. Justice Hughes, dissenting.

Mr. Justice Hughes and I are of opinion that the judgment should be reversed. The only question before us is whether the petition shows on its face that the writ of *habeas corpus* should be denied, or whether the District Court should have proceeded to try the facts. The allegations that appear to us material are these. The trial began on July 28, 1913, at Atlanta, and was carried on in a court packed with spectators and surrounded by a crowd outside, all strongly hostile to the petitioner. On Saturday, August 23, this hostility was sufficient to lead the judge to confer in the presence of the jury with the Chief of Police of Atlanta and the Colonel of the Fifth Georgia Regiment stationed in that city, both of whom were known to the jury. On the same day, the evidence seemingly having been closed, the public press, apprehending

danger, united in a request to the Court that the proceedings should not continue on that evening. Thereupon the Court adjourned until Monday morning. On that morning when the Solicitor General entered the court he was greeted with applause, stamping of feet and claping of hands, and the judge before beginning his charge had a private conversation with the petitioner's counsel in which he expressed the opinion that there would be 'probable danger of violence' if there should be an acquittal or a disagreement, and that it would be safer for not only the petitioner but his counsel to be absent from Court when the verdict was brought in. At the judge's request they agreed that the petitioner and they should be absent, and they kept their word. When the verdict was rendered, and before more than one of the jurymen had been polled there was such a roar of applause that the polling could not go on until order was restored. The noise outside was such that it was difficult for the judge to hear the answers of the jurors although he was only ten feet from them. With these specifications of fact, the petitioner alleges that the trial was dominated by a hostile mob and was nothing but an empty form.

We lay on one side the question whether the petitioner could or did waive his right to be present at the polling of the jury. That question was apparent in the form of the trial and was raised by the application for a writ of error; and although after the application to the full Court we thought that the writ ought to be granted, we never have been impressed by the argument that the presence of the prisoner was required by the Constitution of the United States. But *habeas corpus* cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved opens the inquiry whether they have been more than an empty shell.

The argument for the appellee in substance is that the trial was in a court of competent jurisdiction, that it retains jurisdiction although, in fact, it may be dominated by a mob, and that the rulings of the state court as to the fact of such domination cannot be reviewed. But the argument seems to us inconclusive. Whatever disagreement there may be as to the scope of the phrase 'due process of law,' there can be no doubt that it embraces the fundamental conception of a fair trial, with opportunity to be heard. Mob law does not become due process of law by securing the assent of a terrorized jury. We are not speaking of mere disorder, or mere irregularities in procedure, but of a case where the processes of justice are actually subverted. In such a case, the Federal court has jurisdiction to issue the writ. The fact that the state court still has its general jurisdiction and is otherwise a competent court does not make it impossible to find that a jury has been subjected to intimidation in a particular case. The loss of jurisdiction is not general but particular, and proceeds from the control of a hostile influence.

When such a case is presented, it cannot be said, in our view, that the state court decision makes the matter *res judicata*. The State acts when by its agency it finds the prisoner guilty and condemns him. We have held in a civil case that it is no defence to the assertion of the Federal right in the Federal court that the State has corrective procedure of its own—that still less does such procedure draw to itself the final determination of the Federal question. *Simon* v. *Southern Ry.*, 236 U. S. 115, 122, 123. We see no reason for a less liberal rule in a matter of life and death. When the decision of the question of fact is so interwoven with the decision of the question of constitutional right that the one necessarily involves the other, the Federal court must examine the facts. *Kansas Southern Ry.* v., *C. H. Albers Commission Co.*, 223 U. S. 573, 591. *Nor. & West. Ry.* v. *Conley*,

March 8, 1915, 236 U. S. 605. Otherwise, the right will be a barren one. It is significant that the argument for the State does not go so far as to say that in no case would it be permissible on application for *habeas corpus* to override the findings of fact by the state courts. It would indeed be a most serious thing if this Court were so to hold, for we could not but regard it as a removal of what is perhaps the most important guaranty of the Federal Constitution. If, however, the argument stops short of this, the whole structure built upon the state procedure and decisions falls to the ground.

To put an extreme case and show what we mean, if the trial and the later hearing before the Supreme Court had taken place in the presence of an armed force known to be ready to shoot if the result was not the one desired, we do not suppose that this Court would allow itself to be silenced by the suggestion that the record showed no flaw. To go one step further, suppose that the trial had taken place under such intimidation and that the Supreme Court of the State on writ of error had discovered no error in the record, we still imagine that this court would find a sufficient one outside of the record, and that it would not be disturbed in its conclusion by anything that the Supreme Court of the State might have said. We therefore lay the suggestion that the Supreme Court of the State has disposed of the present question by its judgment on one side along with the question of the appellant's right to be present. If the petition discloses facts that amount to a loss of jurisdiction in the trial court, jurisdiction could not be restored by any decision above. And notwithstanding the principle of comity and convenience (for in our opinion it is nothing more, *United States* v. *Sing Tuck*, 194 U. S. 161, 168), that calls for a resort to the local appellate tribunal before coming to the courts of the United States for a writ of *habeas corpus*, when, as here, that resort has been had in vain, the power to secure fundamental rights

that had existed at every stage becomes a duty and must be put forth.

The single question in our minds is whether a petition alleging that the trial took place in the midst of a mob savagely and manifestly intent on a single result, is shown on its face unwarranted, by the specifications, which may be presumed to set forth the strongest indications of the fact at the petitioner's command. This is not a matter for polite presumptions; we must look facts in the face. Any judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere. And when we find the judgment of the expert on the spot, of the judge whose business it was to preserve not only form but substance, to have been that if one juryman yielded to the reasonable doubt that he himself later expressed in court as the result of most anxious deliberation, neither prisoner nor counsel would be safe from the rage of the crowd, we think the presumption overwhelming that the jury responded to the passions of the mob. Of course we are speaking only of the case made by the petition, and whether it ought to be heard. Upon allegations of this gravity in our opinion it ought to be heard, whatever the decision of the state court may have been, and it did not need to set forth contradictory evidence, or matter of rebuttal, or to explain why the motions for a new trial and to set aside the verdict were overruled by the state court. There is no reason to fear an impairment of the authority of the State to punish the guilty. We do not think it impracticable in any part of this country to have trials free from outside control. But to maintain this immunity it may be necessary that the supremacy of the law and of the Federal Constitution should be vindicated in a case like this. It may be that on a hearing a different complexion would be given to the judge's alleged request and expression of fear. But supposing the alleged facts to be true, we are

of opinion that if they were before the Supreme Court it sanctioned a situation upon which the Courts of the United States should act, and if for any reason they were not before the Supreme Court, it is our duty to act upon them now and to declare lynch law as little valid when practiced by a regularly drawn jury as when administered by one elected by a mob intent on death.