Ex parte STARR.

(District Court, D. Montana. January 31, 1920.)

No. 794.

WAR ☞4—STATE SEDITION ACT VALID.

Laws Mont. Ex. Sess. 1918, c. 11, making it an offense, inter alia, to utter contemptuous and slurring language about the flag and language calculated to bring the flag into contempt and disrepute, *held* constitutional and valid as to offenses committed prior to amendment of Espionage Act, tit. 1, § 3, by Act May 16, 1918, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c).

Application by E. V. Starr for writ of habeas corpus. Denied.

H. A. Tyvand, of Butte, Mont., for petitioner.

BOURQUIN, District Judge. In this habeas corpus it appears that in February, 1918, the Montana Legislature enacted a statute "defining the crime of sedition," which, in so far as it relates to the flag, is like the federal Espionage Law of May, 1918. In August, 1918, an information was filed in the state court, charging that in March, 1918, this petitioner had "committed the crime of sedition," by uttering and publishing contemptuous and slurring language about the flag and language calculated to bring the flag into contempt and disrepute, as follows:

"What is this thing anyway? Nothing but a piece of cotton with a little paint on it and some other marks in the corner there. I will not kiss that thing. It might be covered with microbes."

Tried and convicted, he was sentenced to the state penitentiary for not less than 10 years nor more than 20 years at hard labor, and to

pay a fine of $500 and costs. Not apparent whether he appealed; in November, 1919, he applied to the state Supreme Court for habeas corpus, was denied, and thereupon made this application.

His principal contention is that the state law is repugnant to the federal Constitution, in that it assumes powers vested in the United States alone and by it exercised, and hence that he is imprisoned in violation of the Thirteenth and Fourteenth Amendments. Despite Urquhart v. Brown, 205 U. S. 181, 27 Sup. Ct. 459, 51 L. Ed. 760, Frank's Case, 237 U. S. 328, 35 Sup. Ct. 582, 59 L. Ed. 969, warrants consideration of the merits of petitioner's application. That the state may legislate in protection of the flag is settled by Halter v. Nebraska, 205 U. S. 41, 27 Sup. Ct. 419, 51 L. Ed. 696, 10 Ann. Cas. 525. Although that case leaves open whether such state legislation will be superseded by later like federal legislation, the issue is not involved herein, for that petitioner's offense against the state is prior to the federal law, which latter neither pardons the offense nor draws it within federal jurisdiction.

In the matter of his offense and sentence, obviously petitioner was more sinned against than sinning. It is clear that he was in the hands of one of those too common mobs, bent upon vindicating its peculiar standard of patriotism and its odd concept of respect for the flag by compelling him to kiss the latter—a spectacle for the pity as well as the laughter of gods and men! Its unlawful and disorderly conduct, not his just resistance, nor the trivial and innocuous retort into which they goaded him, was calculated to degrade the sacred banner and to bring it into contempt. Its members, not he, should have been punished.

Patriotism is the cement that binds the foundation and the superstructure of the state. The safety of the latter depends upon the integrity of the former. Like religion, patriotism is a virtue so indispensable and exalted, its excesses pass with little censure. But when, as here, it descends to fanaticism, it is of the reprehensible quality of the religion that incited the massacre of St. Bartholomew, the tortures of the Inquisition, the fires of Smithfield, the scaffolds of Salem, and is equally cruel and murderous. In its name, as in that of Liberty, what crimes have been committed! In every age it, too, furnishes its heresy hunters and its witch burners, and it, too, is a favorite mask for hypocrisy, assuming a virtue which it haveth not. So the mobs mentioned were generally the chosen and last resort of the slacker, military and civil, the profiteer, and the enemy sympathizer, masquerading as superpatriots to divert attention from their real character. Incidentally, it is deserving of mention here that in the records of this court is a report of its grand jury that before it attempts had been made to prostitute the federal Espionage Law to wreak private vengeance and to work private ends.

As for the horrifying sentence itself, it is of those criticized by Mr. Justice Holmes in Abrams' Case, 250 U. S. 616, 40 Sup. Ct. 17, 63 L. Ed. 1173, in that, if it be conceded trial and conviction are warranted, so frivolous is the charge that a nominal fine would serve every end of justice. And it, with too many like, goes far to give

color, if not justification, to the bitter comment of George Bernard Shaw, satirist and cynic, that during the war the courts in France, bleeding under German guns, were very severe; the courts in England, hearing but the echoes of those guns, were grossly unjust; but the courts of the United States, knowing naught save censored news of those guns, were stark, staring, raving mad. All this, however, cannot affect habeas corpus. It can appeal to the pardoning power alone.

The state law is valid, petitioner's imprisonment is not repugnant to the federal Constitution, this court cannot relieve him, and the writ is denied.