Frank ABEL and John G. Grimes, Petitioners,

v.

Harry C. TINSLEY, Warden, Colorado State Penitentiary, Respondent.

Civ. A. No. 7467.

United States District Court
D. Colorado.
July 9, 1962.

Walter L. Gerash, Denver, Colo., for petitioners.

J. F. Brauer, Asst. Atty. Gen., Denver, Colo., for respondent.

CHILSON, District Judge.

In 1947 the petitioners were found guilty by a jury in the District Court of Gunnison County, Colorado of the crimes of robbery (count 1), kidnapping accompanied by bodily harm (count 2), and kidnapping for extortion (count 3).

The petitioners are now confined in the Colorado State Penitentiary under sentences imposed upon their convictions.

Upon application by petitioners, this court permitted petitioners to file herein, in forma pauperis, their petition for a writ of habeas corpus, and appointed counsel, Walter L. Gerash, to represent them.

The petitioners allege they are unlawfully detained and restrained of their liberty for the following reasons:

(a) Petitioners were denied adequate counsel as guaranteed by the due process clause of the Fourteenth Amendment of the Federal Constitution; and

(b) That the District Court of Gunnison County, Colorado, lost jurisdiction to pronounce sentence because it violated the fundamental principles of liberty and justice as guaranteed by the due process clause of the Fourteenth Amendment of the Federal Constitution.

Hearings were held on May 25 and June 15, 1962, at which the petitioners appeared in person and by their appointed counsel, and respondent appeared by J. F. Brauer of the State Attorney General's office. Evidence was received, argument of counsel heard and the matter was taken under advisement by the Court.

Beginning in the year 1957, the petitioners instituted a series of proceedings which are set forth in the petition. This Court finds and determines that petitioners have exhausted the remedies available to them in the courts of the State of Colorado, and that the present petition should be determined upon its merits.

APPLICABLE PRINCIPLES OF LAW

In determining the issues herein, the Court follows the following principles of law:

INADEQUATE COUNSEL

"Lack of effective assistance of counsel in the trial of a criminal case constitutes impingement upon a constitutional right of the accused and lays the judgment and sentence open to collateral attack * * *. But the constitutional right to the effective assistance of counsel does not vest in the accused the right to the services of an attorney who meets any specified aptitude test in point of professional skill. And common mistakes of judgment on the part of counsel, common mistakes of strategy, common mistakes of trial tactics, or common errors of policy in the course of a criminal case do not constitute grounds for collateral attack upon the judgment and sentence by motion under the statute. It is instances in which resulting from the substandard level of the services of the attorney the trial becomes mockery and farcical that the judgment is open to collateral attack on the ground that the accused was deprived of his constitutional right to effective assistance of counsel. Mitchell v. United States, 104 U.S. App.D.C. 57, 259 F.2d 787, certiorari denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Black v. United States,

9 Cir., 269 F.2d 38, certiorari denied, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357." Frand v. United States, 10 Cir., 301 F.2d 102, 103.

## VIOLATION OF DUE PROCESS CLAUSE

■ Habeas corpus cannot be used as a writ of error to review irregularities and errors in the trial court. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Gay v. Graham, 10 Cir., 269 F.2d 482.

■ Habeas corpus proceedings may not be employed as a substitute for appeal. Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Alexander v. Daugherty, 10 Cir., 286 F.2d 645; Maxwell v. Hudspeth, 10 Cir., 175 F.2d 318, certiorari denied, 338 U.S. 834, 70 S.Ct. 39, 94 L.Ed. 509.

■ A denial of due process in the conduct of a trial offends Fourteenth Amendment safeguards, renders the judgment void and entitles the accused to relief by means of habeas corpus. Devine v. Hand, 10 Cir., 287 F.2d 687; Gay v. Graham, 10 Cir., 269 F.2d 482.

■ In determining whether the deprivation of constitutional rights amounts to a denial of due process, the inquiry on habeas corpus is directed to a review of the entire proceedings and not to each separate part and step thereof. Gay v. Graham, 10 Cir., 269 F.2d 482; Brock v. Hudspeth, 10 Cir., 111 F.2d 447.

If the total result was the granting to accused of a fair and deliberate trial, then no constitutional rights have been invaded and the proceedings will not be disturbed. Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Devine v. Hand, 10 Cir., 287 F.2d 687; Odell v. Hudspeth, 10 Cir., 189 F.2d 300.

## FINDINGS OF FACT

■ The petitioners set forth ten specific allegations of fact in support of denial of due process. The Court will make findings of fact upon the totality of the record as well as the specific allegations of the petitioners.

About 12:30 A.M. in the early morning of March 22, 1947, one Mace, a hotel employee, was abducted in Gunnison, Colorado, by three men, taken by automobile to the outskirts of town, robbed, threatened if he did not tell where certain money was located, and beaten and injured.

Within two days thereafter, the petitioners were arrested and in due course charged with the commission of the crimes for which they were convicted.

Without going into detail as to the evidence produced at the trial, the trial record shows the petitioners were identified by the victim Mace as two of the three persons who abducted, robbed and beat him. Considerable corroborative evidence was introduced, including two witnesses who identified the petitioners as being in that area of the State on that morning.

Although the petitioners did not testify in their own behalf, witnesses were produced in their behalf in an attempt to establish an alibi, namely, that the defendants were in Pueblo, Colorado, at the time of the crime. It is sufficient to say that there is ample evidence in the trial record to sustain the convictions.

The trial was commenced on July 10, 1947. At the opening of court on that morning the transcript of the trial record discloses the following proceedings:

"DISTRICT ATTORNEY: Let the record show that a copy of the Information, and copy of the jury list for the April, 1947 Term of the District Court of Gunnison County, Colorado has been served upon Mr. Tolen, attorney for the defendants, and I understand they wish to waive formal arraignment and plead not guilty to each of the counts of the information.

MR. TOLEN: That is right.

"DISTRICT ATTORNEY: We move at this time to add an additional name on the witness list of the information, the name of George Mor-

ris, which came to our attention yesterday.

MR. TOLEN: No objection.

COURT: It may be added.

DISTRICT ATTORNEY: We are ready for trial, your Honor.

MR. TOLEN: Defendants wish to enter a motion at this time for a change of venue to Montrose County, Colorado on the basis of the inflaming of passion and prejudice on the part of the citizens of Gunnison County by the publication of two articles in the newspaper shortly after the arrest of the defendants, and the further ground that the defendants were brought into the court room in manacles in the presence of the jurors. And for these reasons we believe it is impossible for them to have a fair and impartial trial in Gunnison County.

(Whereupon the court and counsel adjourned to Chambers out of the presence of the jurors for argument of the motion for change of venue.)

COURT: The motion for change of venue will be denied.

MR. TOLEN: The defendants are ready to proceed with the trial of this case under one condition. First I might explain that it was not until Sunday evening that I was informed the District Attorney's office would not call a certain witness from Pueblo, whom we desire to have present; and it was not until this morning that I learned that defendants had funds available to pay expenses, and we had thought it impossible to get this witness because he was out of our reach, and the State could have paid the fees. And this morning I found the defendants could produce their witnesses if a subpoena is not yet issued. We will try and get in touch with these witnesses at noon and see if we can get them here this afternoon or tomorrow morning. If we cannot reach them we want the trial continued as we feel that they are important witnesses. We can proceed only on that condition.

COURT: How long is it since you learned the defendants could pay these expenses?

MR. TOLEN: Since about 8:30 this morning.

COURT: You ought to have been advised of that before.

MR. TOLEN: Since my appointment as counsel up to that time they had not been advised that I had been appointed.

DISTRICT ATTORNEY: I am questioning that statement. It is not correct.

COURT: I think they were advised. The defendants had said that they were without means and the court was asked to appoint counsel to defend them, and I asked you to represent them, and I am sorry if you did not follow that up with notice to the defendants.

MR. LASHBROOK (Sheriff of Gunnison County): I conferred with them about the appointment.

COURT: I cannot oppose your trying to get your witnesses here. You can attend to writing them or contacting them.

TOLEN: We also have two witnesses from Alamosa we would like to subpoena, and we can possibly get them if we can have a little recess.

COURT: You can possibly get them at noon and we will proceed to try and get a jury.

MR. TOLEN: The defendants feel there has been irregularity here that they don't understand; that they didn't understand they were to go to trial today, and they wish to make a statement to obtain a continuance of the trial.

COURT: I can't put the trial off. So far as I know there is no reason why they should complain now as to procedure, and we will go ahead and secure and qualify the jury, as there

is nothing irregular about the procedure."

At the close of the evidence the transcript of the trial record discloses the following:

MR. TOLEN: If Your Honor please we had subpoenaed a witness from Salida and she refused to come, and we ask for a continuance until we can obtain her.

COURT: I cannot grant you a continuance on failure of your witness to be here. We will have to proceed."

The jury returned its verdicts of guilty on July 11, 1947, and on the next day, the petitioners and their counsel being present in court, petitioners' counsel, in open court, waived the right to file a motion for new trial and the petitioners were sentenced.

No further proceedings were had until 1957, when the petitioners filed in the District Court of Gunnison County, Colorado, motion to vacate the judgments and sentences. At a hearing upon this motion one of the jurors, Mr. Scott, testified that during the jury's deliberation there was a communication between the jury and the judge through the bailiff concerning the instructions.

Based upon this record and their own testimony, the petitioners make ten specific allegations of fact, the totality of which they contend amounted to a denial of due process. Although later we will make more extended findings, we here set forth the ten allegations with a short statement of the Court's findings as to each.

Allegation: (1) Court appointed counsel never prepared or consulted with defendants until one hour before the trial of a felony offense.

Finding: Counsel did prepare and consulted with petitioners at least twice, the first time approximately two weeks before the trial.

Allegation: (2) The Court denied a continuance to petitioners even after it was informed of the lack of preparedness

of defense counsel and also by request of the defendants.

Finding: Counsel did not request a continuance for lack of preparedness but stated he was ready for trial if certain witnesses could be present. The witnesses appeared and testified.

Allegation: (3) The court appointed counsel, either because of incompetency or lack of time for preparation or both made a record that clearly shows denial of adequate counsel for the trial of a felony case.

Finding: Counsel was competent, prepared and adequate.

Allegation: (4) Defendants did not know they were to go to trial until the very day it began.

Finding: Petitioners, through counsel, requested a continuance on the ground petitioners did not understand they were to go to trial on that date. The request was denied. Petitioners were advised by counsel approximately two weeks prior to the trial of the trial date.

Allegation: (5) Court appointed inadequate counsel waived defendants' right of appeal by waiving motion for a new trial.

Finding: Petitioners' counsel waived motion for new trial after consultation with petitioners.

Allegation: (6) Defendants were not arraigned until the day of trial when the court appointed defense waived formal arraignment.

Finding: Arraignment was not had until day of the trial. The delay in arraignment was at request of petitioners who desired to obtain counsel before arraignment was had.

Allegation: (7) Defendants were denied process to compel the attendance of witnesses on their behalf.

Finding: At conclusion of the evidence, petitioners' counsel requested a continuance to obtain the presence of "a witness from Salida." No showing was made to the trial court of what the witness could or would testify.

Allegation: (8) A change of venue was denied in spite of local prejudice and inflammatory newspaper articles.

Finding: The motion was not supported by evidence or affidavit that prejudice did exist. The motion was denied.

Allegation: (9) Defendants were brought before the presence of the jury in manacles.

Finding: For a considerable part of the trial the petitioners were handcuffed and only after repeated objections by petitioners' counsel were they removed.

Allegation: (10) The trial judge communicated with the jurors in the jury room out of the presence of the defendants and their counsel.

Finding: There was a communication by the trial judge to the jury through the bailiff concerning the instructions.

The court further finds that after their arrest, petitioners consulted with an attorney, one Carroll, but did not employ him; thereafter they made additional efforts to employ counsel; that the opening of the term of Gunnison County District Court occurred on April 21, 1947, and shortly prior thereto the District Attorney asked petitioners if they were ready for arraignment on that date; petitioners stated that they had not yet employed an attorney and they would prefer not to be arraigned until they had employed counsel; at the opening of the term on April 21, an order was entered appointing Mr. Tolen to represent the defendants, but Mr. Tolen was not directed to undertake the defense of petitioners because petitioners were still attempting to obtain their own counsel; approximately two weeks before the trial, defendants not having employed counsel, Mr. Tolen was directed by the District Judge to undertake the defense of petitioners; thereupon, Mr. Tolen went to Gunnison where he consulted with petitioners, advised them of the date of the trial and started his preparations for the trial; after consultation with petitioners, Mr. Tolen made a trip to Pueblo, Colorado, to interview prospective witnesses; he later made a trip to Gunnison, Colorado, to attempt to obtain affidavits of prejudice of the populace resulting from certain newspaper articles upon which to base a motion for change of venue; he was unsuccessful in obtaining the affidavits; Mr. Tolen consulted with the petitioners at least twice prior to the trial.

On the morning of the trial date, Mr. Tolen waived formal arraignment, and pleas of not guilty to each of the counts of the information were entered. Thereupon, Mr. Tolen moved for a change of venue to Montrose County because of prejudice on the part of the citizens of Gunnison County resulting from the publication of two newspaper articles and on the further ground that the defendants were brought into the court room in manacles in the presence of the prospective jurors. The motion was denied. No affidavits were filed in support of the motion for change of venue based on prejudice of the citizens and no evidence was offered in support thereof. The Court finds that the defendants were brought into the court room in the presence of prospective jurors in handcuffs and that they were so handcuffed during a considerable part of the trial; that Mr. Tolen repeatedly objected thereto and at some time during the course of the trial the Court sustained the objection and the handcuffs were removed.

After the denial of the motion for change of venue, Mr. Tolen stated the defendants were ready to proceed with the trial of the case upon the condition that he was able to obtain the presence of a certain witness from Pueblo and two witnesses from Alamosa. The trial proceeded and after the close of the People's evidence a witness from Pueblo (Mr. Pritchard) and two witnesses from Alamosa (Ordeon Gitterer and Bonnie Abel) were present in court, were sworn and testified on behalf of the petitioners to facts bearing upon the presence of the petitioners in Pueblo, Colorado on the date of the crime.

The Court further finds that these three witnesses are the witnesses referred to by Mr. Tolen prior to the com-

mencement of the trial as being necessary for petitioners to proceed to trial.

Also prior to the trial Mr. Tolen made the following statement to the Court:

"MR. TOLEN: The defendants feel there has been irregularity here that they don't understand; that they didn't understand they were to go to trial today, and they wish to make a statement to obtain a continuance of the trial."

This request was denied by the trial court. The Court finds that the defendants were advised by Mr. Tolen approximately two weeks before the trial of the date of the trial.

The Court further finds that at the close of the evidence Mr. Tolen stated he had subpoenaed a witness from Salida who refused to come, and requested a continuance until the presence could be obtained. The trial court was not advised in any manner as to the nature of the testimony to be elicited from the witness. Mr. Tolen, in testifying before this court on June 15th, stated that his best recollection was that the Salida witness came to light during the course of the trial and that he didn't believe that he knew what the witness would testify to.

There is no evidence in the trial record or in the evidence to be considered by this Court of what the witness would or could have testified to had the witness been produced.

The Court further finds that the day after the verdicts were returned by the jury, the petitioners were brought into open court, at which time Mr. Tolen was present; at that time Mr. Tolen waived a motion for a new trial; that he talked to the petitioners about a new trial; subsequently Mr. Tolen learned that the jury had spent almost the entire time in deliberation on the sentence, that is, whether to impose the death penalty or life imprisonment, and that led Mr. Tolen to believe that a new trial was probably not the thing to ask for.

At the hearing in 1957 before the Gunnison County District Court upon petitioners' motion to set aside the judgments and sentences, Mr. Kenneth W. Scott, one of the jurors, was sworn and testified that the Judge was contacted during their deliberations to clarify some point in the instructions; he didn't recall what the point was; that the contact with the Judge was made by the bailiff by telephone; the Judge didn't talk to the jury; that "I don't remember what was said" and that shortly after they got their answer from the Judge, the jury came to a verdict, and, "I don't think they would have as soon if it hadn't been for contacting the Judge." The trial record is devoid of any reference to such a communication.

The Court further finds that Mr. Tolen, petitioners' counsel, was admitted to the bar in the State of Colorado on September 23, 1946; thereafter he practiced in Montrose, Colorado, and had tried one criminal case as defense counsel prior to the present trial; that he had previously been in the military service for nine years, and during World War II was trial counsel and defense counsel on a number of court martials, many felony cases and many misdemeanors and military offense cases, and had sat as law officer on a court martial in a capital case but had never defended a capital case.

The Court further finds from a review of the transcript of the trial proceedings that petitioners' counsel carefully and with thoroughness cross-examined the People's witnesses; competently and diligently conducted the defense of petitioners; that counsel was adequate and competent and that the trial, far from being "mockery and farcical", was adequately and competently conducted; that there was submitted to the jury on one count the question of whether the petitioners should be punished by death or life imprisonment; the jury returned a verdict of life imprisonment rather than death, indicating that counsel was neither ineffective nor inadequate.

The Court further finds that the totality of the facts does not sustain petitioners' charges that they were denied

adequate counsel or that the conduct of the trial constituted a denial of due process as guaranteed by the Fourteenth Amendment of the Federal Constitution.

### CONCLUSIONS OF LAW

The Court concludes as a matter of law that upon the totality of the facts the petitioners had adequate and competent counsel.

The Court further concludes as a matter of law and upon the totality of the facts that the conduct of the trial did not offend the safeguards provided in the Fourteenth Amendment, and that the petitioners were not denied due process in the conduct of the trial or the proceedings leading up thereto.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus be and the same is hereby denied.