OPINION OF THE COURT
Robert A. Harlem, J.
The defendant City of Binghamton (hereafter City) moves for summary judgment.
The plaintiffs own certain real property located in the City of Binghamton, and on October 4,1976 they presented an application to the city council to rezone the land. The City Director of Planning issued an opinion on October 18, 1976 supporting the application. On November 1 of that year the Commissioner of Planning for the County of Broome (wherein the city is located) sent forth an opinion opposing the application. The planning commission of the City, on November 15, 1976, expressed its views in opposition. More than 20 of the owners of property adjacent to the subject land filed objections to the rezoning.
*1018 On November 15, 1976 the city council voted 7 to 2 in favor of rezoning. This action was vetoed by the Mayor of the City on November 17, 1976. Two days later a special meeting was called by the city council, and this body again voted 7 to 2 to override the Mayor’s veto. An Assistant Corporation Counsel who attended this meeting expressed the view that an override vote at that time was proper. On that same date the ordinance was filed with the city clerk.
On November 24, 1976 the Corporation Counsel of the City filed an opinion with the County Clerk to the effect that the procedure observed in overriding a veto at a special meeting was improper, thus rendering the override void, invalid and of no effect.
On December 13, 1976 the plaintiffs applied for a building permit, and this was refused in view of the opinion of Corporation Counsel. An article 78 proceeding was then commenced by these plaintiffs, and it was therein determined that the procedure involving the override vote was valid. This decision was appealed and affirmed by the Appellate Division, Third Department. A motion for leave to appeal was denied by the Court of Appeals on November 16, 1977.
A building permit was eventually issued on November 23,1977, construction was undertaken, and a certificate of occupancy was finally rendered.
In this action the plaintiffs seek damages which they claim to have suffered by the delay in construction stemming from the effect given to the opinion of the Corporation Counsel. It is their position that the authorship and filing of the opinion was either an act of negligence or a malicious, wanton and unlawful effort which deprived the plaintiffs of their civil rights under the United States Constitution.
It is fundamental that on a motion for summary judgment, the function of the court is to define and not determine issues (Bankers Trust Hudson Val. v Christie, 68 AD2d 969). Of course, the question for determination is not whether the plaintiff will or may ultimately establish the liability of the defendant, but whether there exists a substantial issue of fact on the matter of liability which would *1019 require a plenary trial (Barr v County of Albany, 50 NY2d 247). In order to afford the drastic relief sought by this defendant, it must clearly appear that no material or triable issue of fact is presented. If there is any doubt as to the existence of such an issue, or where there is arguably such an issue, the relief sought should be denied (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 39.5).
In Friends of Animals v Associated Fur Mfrs. (46 NY2d 1065, 1067-1068), the Court of Appeals set forth the standard to be applied in evaluating the proof submitted by the parties on a motion for summary judgment: “To obtain summary judgment it is necessary that the movant establish his cause of action or defense ‘sufficiently to warrant the court as a matter of law in directing judgment’ in his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible form. On the other hand, to defeat a motion for summary judgment the opposing party must ‘show facts sufficient to require a trial of any issue of fact’ (CPLR 3212, subd [b]). Normally if the opponent is to succeed in defeating a summary judgment motion he, too, must make his showing by producing evidentiary proof in admissible form. The rule with respect to defeating a motion for summary judgment, however, is more flexible, for the opposing party, as contrasted with the movant, may be permitted to demonstrate acceptable excuse for his failure to meet the strict requirement of tender in admissible form * * * Whether the excuse offered will be acceptable must depend on the circumstances in the particular case.” The court went on to hold that, in a libel action, mere conclusory assertions of actual malice were insufficient to defeat a motion by the defendant for summary judgment.
In Rottkamp v Young (21 AD2d 373, affd 15 NY2d 831) it was held that neither a building inspector nor the municipality that employed him could be held liable for damages resulting from a wrongful refusal to issue a building permit pursuant to a valid zoning ordinance. In that case, the Appellate Division, Second Department, noted (21 AD2d 373, 375) that it had long been considered to be well settled that “ ‘no public officer is responsible in a civil suit for a judicial determination, however erroneous or wrong it may be, or however malicious even the motive which produced *1020 it.’ ” The court went on to note that under the rule there is a distinction to be drawn between a ministerial or nondiscretionary act from which liability flows if done wrongfully and a judicial or discretionary act for which the public officer is immune from liability even if the act is wrongful. The court stated (21 AD2d 373, 375-376): “To fasten responsibility for damages on a public officer for the exercise of judgment or discretion in favor of one disappointed by the result ‘would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties’ * * * In weighing the balance between the effects of oppressive official action and vindictive or retaliatory damage suits against the officer, we think that the public interest in prompt and fearless determinations by the officer, based on his interpretation of the law and the facts before him, must take precedence. A public officer, haunted by the specter of a lawsuit, may well be subject to the twin tendencies of procrastination and compromise to the detriment of the proper performance of his duties”.
It was therein concluded that the action of the building inspector, although erroneous, was discretionary and quasi-judicial in character. Liability under these circumstances did not attach. While different standards might ordinarily apply to a municipality, it was eventually concluded that the defendant town in that case should be free of responsibility based upon the same policy considerations which exonerated a public officer. This decision was affirmed by the Court of Appeals on the opinion of the Appellate Division. The principles enunciated by Rottkamp (supra) were restated by the Appellate Division, Second Department, in Ilson v Incorporated Vil. of Ocean Beach (79 AD2d 697). More recently, the Court of Appeals in 154 East Park Ave. Corp. v City of Long Beach (52 NY2d 991) cited Rottkamp favorably, and used it as a basis for concluding that the revocation of a building permit, although erroneous, was a discretionary act for which liability would not ensue.
In view of the authorities which have been cited, there would appear to be no liability on the part of the City under State law for any claimed damages suffered by the plain *1021 tiffs stemming from the asserted wrongful refusal of the City to issue a building permit. The position of the plaintiffs that pecuniary liability attaches under the 1976 amendment to CPLR 2512 is based upon what appears to be a misconstruction or misapprehension of that statute. Both Ilson and 154 East Park Ave. Corp. (supra) which restated the vitality of the immunity doctrine set forth in Rottkamp (supra) were decided after the amendment to CPLR 2512, and gave no expression to the claimed abrogation of immunity now contended by the plaintiffs.
A cause of action under section 1983 of title 42 of the United States Code is also claimed. It is said that the right of contract of the plaintiffs was impaired and that they were denied due process of law by the failure of the City to issue a building permit. Although not expressly stated, it is presumed that the contract alleged to have been impaired was the lease agreement between the plaintiffs and the defendants, Giragosian and Girgo Corp.
Section 1983 of title 42 of the United States Code provides as follows: “Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.”
In Monell v Department of Social Servs. of City of N. Y. (436 US 658) the United States Supreme Court held that there was no absolute immunity extended to a municipality in actions brought under section 1983. In that case it was stated that the term “person” as used in the statute embraced public and private corporations. The court literally refused to consider whether some limited immunity might be extended to municipalities.
In 1980, the United States Supreme Court in Owen v City of Independence (445 US 622) expressed the view that *1022 municipalities were not entitled to even a limited immunity in section 1983 suits. The court specifically rejected notions of tradition or history, stating that there is no municipal discretion to violate the Federal Constitution. It was noted that the dictates of the Constitution are absolute and imperative. Judicial review of the conduct of a municipality with respect to its observance of the constitutional rights of individuals is not an exercise in second guessing the reasonableness of the decision of the City, nor is it an interference with a local government’s resolution of competing policy considerations. Such judicial endeavor is merely to determine whether the municipality has conformed to the requirement of the Federal Constitution statutes.
Inasmuch as municipal immunity does not attach, the next matter for consideration is to determine, on the basis of the material submitted, whether the constitutional rights of the plaintiffs* as those rights are asserted in the pleadings, have been violated.
It is claimed by the plaintiffs that the refusal to issue a building permit on the basis of the opinion put forth by the Corporation Counsel constitutes a violation of section 10 of article I of the United States Constitution wherein is contained a prohibition against enacting any law impairing the obligations of contracts. It has been written that such a right is violated if the effect of the governmental action was to rewrite an antecedent contract or change the substantive rights of the parties to an existing contract. Conversely, contracting parties cannot be heard to complain on constitutional grounds if they get no more than what they contracted for by the agreement. The governmental action must also involve the contract itself as distinguished from the property which is the subject matter of the contract (16A Am Jur 2d, Constitutional Law, § 695).
The lease between the plaintiffs and the defendants, Giragosian and Girgo Corp., recognized that the real property was not properly zoned for the use contemplated by the agreement, and the plaintiffs were burdened with the expense and effort of bringing about the rezoning. Secondly, the acts of the City which are complained of by the *1023 plaintiffs relate to the property and not to the lease itself. Under the state of facts as presented to this court, it is clear that the plaintiffs knew of the zoning problems, contracted with those zoning problems in mind, and now seek some form of compensation from the City for accomplishing that which they had undertaken to do by contract in any event. While delays might have been encountered, there is no assurance in any matter of this nature that decision making be done with expedition and dispatch. It is difficult to see how the right of contract was impaired. This is the precise type of second guessing which the Supreme Court said would not take place in rejecting items of immunity to be extended to municipalities in a section 1983 lawsuit. If a delay is actionable under section 1983, at what point does it become actionable? Would not the courts be called upon to consider the reasonableness of the length of time taken to process an application? If so, would such an overview be second guessing?
In any event, there was no intrusion upon the contract rights of these plaintiffs by any act engaged in, by or on behalf of the City, and such an ostensible cause of action cannot be sustained.
Lastly, deprivation of property without due process of law is asserted. In order to establish such a claim, a party must demonstrate that a property right exists and that it has been confiscated, extinguished, destroyed, or that an essential attribute of the property has been taken away so that its value has been impaired or its use restricted or interrupted by constitutionally prohibited acts and without just compensation. It has also been said that if the application of the property to the purposes of trade has been hampered so that the value of its use is diminished, the constitutional right has been invaded providing the other prohibited factors are extant. The diminution must be significant as distinguished from de minimus (16A Am Jur 2d, Constitutional Law, § 586).
In this case, the opinion of the Corporation Counsel which resulted in the refusal to issue a building permit did not prohibit any possible use of the property. There is nothing in the papers before the court to indicate that the value of the use of the property was reduced or that there *1024 was any inhibition imposed upon other applications of the property to fruitful enterprises. The effect of the opinion was to restrict its use to that which had been imposed before the veto override vote had been taken. Simply because the land may not have been put to its most profitable use does not make the activities of the municipality improper, unconstitutional nor constitute the act as a deprivation of any right which a property owner may have (see 1 Anderson, New York Zoning Law and Practice [2d ed], § 2.13). Any other conclusion would make a mockery of every zoning ordinance and would afford every such ordinance as a source of fodder for litigation. The whole purpose of zoning ordinances is to define uses and provide for an organized, reasonable development of a community. Implicit in these arrangements is the right to limit the use to which properties may be put. Such limitations are as much a protection of the property rights and interests of residents of the community as they are intrusions upon freedoms to put properties to particular uses.
Due process requires that State or municipal action shall be consistent with fundamental principles of liberty and justice which lie at the base of all our civil and political institutions. Such a concept is often designated as the law of the land, and it applies alike in all the States without variance from one locale to another (Hebert v Louisiana, 272 US 312). The same standard was enunciated in Buchalter v New York (319 US 427). The idea of due process and such abstract definitions as have been set forth do not totally embrace the true meaning of the concept. It has been said that decisions of the executive branch of government, however serious their impact, do not automatically invoke due process protection. There is simply no constitutional guarantee that all executive decision making must comply with standards that assure error-free determinations (Greenholtz v Inmates of Nebraska Penal & Correctional Complex, 442 US 1). Similarly, every error or infirmity which may occur, even during the course of a trial, while calling for the application of supervisory powers by the judiciary, does not necessarily constitute a failure to observe that fundamental fairness essential to the very concept of justice (Donnelly v DeChristoforo, 416 US 637).
*1025 The United States Supreme Court, recognizing that the due process clause does not guarantee that State and local governments will function without error or fault, has also said that the courts may not substitute their judgment for that of the original decision maker (Frank v Mangum, 237 US 309). The courts are also disinclined to become involved or function astride of the day-to-day operations of government, and the due process clause of the Constitution does not require such judicial intervention (Meachum v Fano, 427 US 215).
In the case at hand, we have an opinion which was expressed by the Corporation Counsel. While the plaintiffs might feel that some property deprivation resulted from the issuance of that opinion, and even though the opinion might eventually have been held to be erroneous, such a pattern does not demonstrate a denial of due process.
It is interesting to note in the complaint that the Corporation Counsel is alleged to have acted in a “negligent manner, contrary to the law and in excess of his authority, in a willful, wanton and malicious manner and in violation of the rights of the plaintiffs” by filing the opinion. The bill of particulars in paragraph two, again alleges that the Corporation Counsel was negligent in certain respects. In paragraph three of the bill of particulars it is claimed that the Corporation Counsel directed an assistant to sign an opinion contrary to that which the assistant had previously expressed. It is said that the assistant was compelled to do this under penalty of being fired. It is further claimed that the Corporation Counsel acted in concert to deny plaintiffs their civil rights and liberties and conspired so that a building permit application was refused. There is absolutely nothing in the material submitted to this court to indicate that there was any conspiracy. The Assistant Corporation Counsel has provided an affidavit wherein he states that he was under no compulsion to sign the opinion, but that it was done by him as an expression of the position taken by the office for which he worked. These plaintiffs may feel aggrieved, but there has been no denial of any constitutional right extended to them. The remaining assertions are not sufficient to establish a denial of due process.
*1026 In view of the observations made, the motion for summary judgment is granted, without motion costs.